[L.A. No. 31300. Feb. 5, 1981.]

DONALD GALLAGHER, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Lloyd E. Peake and Peake & Clark for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and Darlene Marie Azevedo for Respondent.

OPINION

**THE COURT.**—This is a proceeding to review a recommendation of the Disciplinary Board of the State Bar (Disciplinary Board) that petitioner be suspended from the practice of law for one year, but that the suspension be stayed on conditions, including three years probation with actual suspension of three months and passage of the Professional Responsibility Examination. Petitioner was admitted to practice law in California in 1959 and has no prior disciplinary record.

Petitioner contends that the findings of the Disciplinary Board are not supported by the evidence and that the discipline is excessive and inappropriate.

In March 1978, formal proceedings were instituted against petitioner as a result of alleged misconduct in two separate matters.

*The Gonyer Matter.*

In the first case, petitioner was retained by Susan Gonyer to secure a dissolution of marriage. At her first and only meeting with petitioner, it was agreed that the fee was to be $288 plus costs and that Gonyer would serve the papers on her husband. Petitioner prepared and filed a petition for dissolution on his client's behalf. Thereafter Gonyer was unsuccessful in her efforts to serve her husband and, uncertain whether to send the papers to her husband's attorney, the client attempted to contact petitioner. When she could not reach him by telephone, she mailed the dissolution papers to him with a letter explaining her lack of success in serving her husband and providing to petitioner the name, address, and telephone number of the husband's attorney. Gonyer heard nothing further from petitioner; phone calls were not returned and letters were not answered. Petitioner's office manager, whom Gonyer reached on one occasion, refused to discuss the case with her because Gonyer owed petitioner a balance on the fee. Gonyer testified that she had not received her file or any correspondence from petitioner indicating that he was withdrawing from the case. Gonyer has since consulted with another attorney to complete the dissolution.

Petitioner testified that when he represented Gonyer he had an active dissolution practice. He could not recall Gonyer or any aspect of her case and had no file or any correspondence relating to her case. He pos-

tulated that he had sent the file to her, as it was not his custom to retain a client's file. He testified, however, that he had no copy of any letter forwarding the documents or any receipt of them, and he could not recall that the documents were in fact sent. The superior court file in the dissolution matter, which was before the hearing panel, contained only the papers filed by petitioner and showed him as attorney of record.

The Disciplinary Board found that petitioner failed to perform the services for which he was retained, failed to seek a substitution of attorneys, and willfully failed and refused to communicate with client Gonyer.

*The Snow Matter.*

In the second case, petitioner was involved in the sale of real property to a client and friend, Floyd Snow. The two had been friends for more than ten years and petitioner served as attorney for Snow's firm and for Snow individually at all times between October 1974 and August 1976.

Petitioner was also involved in a real estate syndicate with two other persons; the syndicate bought and sold properties under the fictitious name of William Shandar Provouskivitz. Among the syndicate's holdings was the Odessa property which Snow desired to purchase. Snow knew that petitioner had an interest in the property because petitioner had earlier attempted to lease it to Snow; Snow thought that perhaps petitioner was attorney for the owner.

Snow testified as follows: In November 1975 he agreed to purchase the Odessa property for $190,000, $45,000 down. He was informed, however, that a lis pendens recorded by a former prospective purchaser (Cohen) clouded the title, and he was advised by petitioner that a "lease arrangement" would be required to permit immediate occupancy. It was represented to him that the cloud was a minor problem and would be settled in two or three months. The documents were prepared by petitioner. After Snow signed, petitioner took the agreements with him, caused Lewis, one of his syndicate partners, to sign the Provouskivitz signature, then notarized the agreement and returned it to Snow on November 14, 1975. At no time was Snow advised that the fictitious name was that of petitioner and he was at no time advised to seek independent counsel. Snow paid the $45,000 down in the period from

November 1975 to March 1976, outside of escrow. Escrow was opened in March 1976. In May 1976, upon receipt of the preliminary title report, Snow learned for the first time that petitioner and Provouskivitz were one and the same. He also learned that the property was the subject of multiple litigations. When Snow negotiated for the purchase of the property in November there were in fact two recorded clouds on the title: The Cohen cloud, of which Snow was aware, and a lis pendens recorded by petitioner's wife who was seeking dissolution of marriage. Petitioner did not inform Snow of the latter cloud and he also failed to tell Snow that Kessler, another of his syndicate partners, was threatening litigation over his interest in the Odessa property. By the time of the title report, the threats had materialized and a third lis pendens had been recorded against the property.

Subsequent attempts to secure petitioner's aid in getting the title cleared and the purchase completed were unsuccessful; Snow retained another attorney and soon thereafter ceased making payments. An unlawful detainer action by petitioner against Snow was unsuccessful; no landlord-tenant relationship was found to exist. Litigation continues as to Snow's interests and rights to the property.

Petitioner testified in his defense that he advised Snow of the competing claims to the property, including the lis pendens filed by petitioner's wife, and that he advised Snow that the litigation could take as long as three years and might be resolved against him. As to his interest in the property, petitioner told Snow that he had a substantial interest in the property. Lewis, petitioner's partner, testified that petitioner advised Snow to talk to an independent attorney in connection with buying the property.

The Disciplinary Board found that petitioner had failed to disclose to his client that he was the owner of a substantial and controlling interest in the real property, that he was William Shandar Provouskivitz, and that, at the time of entering into the agreement, the property was subject to competing claims by three different parties. The Disciplinary Board concluded that petitioner's conduct in the Snow and Gonyer matters constituted violations of Business and Professions Code sections 6067 and 6068 (oath and duties of attorney), section 6103 (breach of oath and duties) and section 6106 (misconduct involving moral turpitude). The Disciplinary Board recommended a one-year suspension, stayed on condition of three years probation and actual suspension of

three months. The review department concurred in the findings of fact and extent of discipline, except that two members recommended public reproval as adequate discipline and a third member recommended that a six, rather than three, months actual suspension be imposed.

■ Petitioner contends that the findings of the Disciplinary Board that he sold the property without disclosing his ownership interest and without disclosing the existence of competing claims against the property are not supported in the evidence. The petitioner has the burden of showing that the findings of the board are not supported by the evidence. (*Baranowski* v. *State Bar* (1979) 24 Cal.3d 153 [154 Cal.Rptr. 752, 593 P.2d 613]; *Schullman* v. *State Bar* (1976) 16 Cal.3d 631 [128 Cal.Rptr. 671, 547 P.2d 447]; *Geffen* v. *State Bar* (1975) 14 Cal.3d 843 [122 Cal.Rptr. 865, 537 P.2d 1225].)

In support of his attack on the findings, petitioner points to various documentary and testimonial evidence which he claims shows that Snow must have known that there was a possibility he would never be able to purchase the property and that Snow must have known he had merely a lease in the property. Specifically, he points to his own testimony that he told Snow about the legal problems facing the sale of the property and he quotes the language in the lease agreement that it would terminate upon completion of the sale or upon success of the litigation represented by the lis pendens. Petitioner also points to the sale agreement which states that the buyer (Snow) understood that the completion of the contract of sale was conditional on the successful outcome of the litigation.

The language in the agreements, however, is entirely consistent with Snow's understanding that *one* lis pendens clouded the title. It would be anticipated, despite petitioner's assurances to Snow that the problems were minor and would be resolved within two or three months, that the contracts in question would be drawn to protect the rights and interests of Snow, whatever the contingency. The documents were prepared by petitioner, Snow's attorney for a number of years, a friend in whose honesty Snow had complete confidence and who Snow had every reason to expect was representing him. The evidence establishes that the parties understood that Snow was purchasing the property and that the documents were drawn to protect his interests and rights as a purchaser, the purported lease to be merely the vehicle for proration of taxes, insurance, and interest until escrow could be opened.

Petitioner also attacks the findings that he failed to disclose his interest in the property and failed to disclose that he was Provouskivitz. Snow admitted that he knew petitioner had "some interest" in the property; the purchase agreement contained a statement that the buyer understood that petitioner had an interest in the property. There is no indication, however, that Snow was informed that petitioner's was a 37-1/2 percent *ownership* interest in the property. The evidence shows that petitioner actively and willfully concealed the fact at the time the agreements were executed, as well as the fact that the seller, Provouskivitz, was an alias of which he was a substantial part. Petitioner correctly notes that he was not Provouskivitz; he shared the alias with Lewis and Kessler. Nevertheless, despite Lewis' presence at the negotiations where the agreements were finally drawn and signed by Snow, petitioner took pains to secure actual signing of the Provouskivitz signature by Lewis outside the presence of Snow.

In State Bar disciplinary matters, this court must independently examine the record, reweigh the evidence and pass on its sufficiency. (*Codiga* v. *State Bar* (1978) 20 Cal.3d 788, 796 [144 Cal.Rptr. 404, 575 P.2d 1186].) After careful review of the record, we conclude that petitioner has failed to sustain the burden of showing that the findings of the Disciplinary Board are not supported by the evidence. His attacks on the findings are essentially requests that we credit his version upon conflicting evidence or that we draw all inferences in his favor upon undisputed evidence. While we must reconsider the evidence anew, we give great weight to the findings below when based on conflicting testimony. Those who have heard the evidence are "in a better position to evaluate conflicting statements after observing the demeanor of the witnesses and the character of their testimony." (*Himmel* v. *State Bar* (1971) 4 Cal.3d 786, 794 [94 Cal.Rptr. 825, 484 P.2d 993]; *Martin* v. *State Bar* (1978) 20 Cal.3d 717 [144 Cal.Rptr. 214, 575 P.2d 757].)

We have concluded that the Disciplinary Board's recommended discipline is adequate. Accordingly, it is ordered that petitioner be suspended from the practice of law for a period of one year, that execution of this order be stayed and that petitioner be placed on probation for the period of three years on conditions that he actually be suspended for the first three months of the probation period and that he comply with those additional conditions of probation as recommended in the board's decision of February 4, 1980, except that petitioner shall be required to take and pass the Professional Responsibility Examination

within one year from the effective date of this order. (*Segretti* v. *State Bar* (1976) 15 Cal.3d 878, 891, fn. 8 [126 Cal.Rptr. 793, 544 P.2d 929].) This order shall be effective 30 days after the filing of this opinion.