[L.A. No. 31476. Aug. 5, 1982.]

EUGENE W. DOYLE, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Severson, Werson, Berke & Melchior, Kurt W. Melchior, Robert A. Spanner and Stephen L. Garber for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and Scott J. Drexel for Respondent.

OPINION

**THE COURT.**—We review a State Bar recommendation that petitioner Eugene W. Doyle (admitted to the practice of law in California on Jan. 15, 1965) be suspended from the practice of law for a period of five years, that execution of the order for suspension be stayed, and that petitioner be placed on probation for five years, with conditions which include two years' actual suspension.

Petitioner contends that the State Bar's subpoena procedure for obtaining trust account records fails to comply with the privacy clause (art. I, § 1) of the California Constitution. He also asserts that the State Bar's finding that he committed perjury in the course of disciplinary proceedings is unsupported by the record. Finally, he urges that the punishment imposed is excessive and not in conformity with the objects of the State Bar to protect the public and to evaluate its members' fitness to practice. We have concluded that petitioner's contentions lack merit and that the State Bar's recommendation should be accepted.

## I. THE FACTS

In 1972, petitioner agreed to represent John Payne regarding a personal injury claim. Payne's claim was settled in May 1975 at which

time petitioner deposited the $32,000 settlement draft in his trust account. However, despite repeated demands by Payne, petitioner delayed until March 1976, after a complaint had been filed with the State Bar, before remitting to Payne his share of the proceeds, which amounted to slightly over $20,000. During the 10-month interim period between settlement and payment to Payne, petitioner had misappropriated the entirety of the funds for his personal use. His trust account balance fell substantially below the amount which he held in trust for his client, and at one point the account was approximately $125 overdrawn.

The record indicates that during the period in question, petitioner suffered severe financial and family problems. These problems stemmed initially from the illness and subsequent death of petitioner's closest friend and petitioner's attempts to help maintain his friend's law practice. The apparent strain increased with the subsequent dissolution of petitioner's marriage, his remarriage to his late friend's widow, and the resulting responsibility of having to provide for two families with many children.

Petitioner has been the subject of one prior disciplinary proceeding resulting from his misappropriation of $400 from his trust fund account, for which misconduct petitioner was publicly reproved. In 1975 and 1976, during the course of the earlier proceeding, petitioner testified that he would have no further opportunity to mishandle trust funds as he had relinquished to others all control of trust account funds.

Pursuant to notice personally served, a hearing was scheduled for August 30, 1979, but neither petitioner nor his attorney appeared. (All references to the acts or omissions of petitioner's "attorney" refer to his former counsel who was representing him prior to the issuance of the State Bar's decision herein, rather than to petitioner's present counsel of record.) The hearing panel met in petitioner's absence and, after concluding that petitioner had violated rule 8-101 of the Rules of Professional Conduct regarding misappropriation and commingling of client funds, and that he had committed perjury in the course of the prior disciplinary proceeding, recommended disbarment.

On petitioner's motion, the ruling was set aside and a new hearing was conducted. The panel reaffirmed its earlier findings and also found that petitioner had not cooperated with the State Bar, had shown little repentance or remorse, had not personally admitted his culpability, and had produced no evidence of rehabilitation or an attempt to restructure his law practice to prevent a recurrence of misconduct. The panel again recommended disbarment.

The review department, by a vote of seven to four, modified the hearing panel's recommendation and recommended a five-year probationary period with two years' actual suspension. The dissenting members of the review department believed that a longer period of actual suspension (but not disbarment) should be imposed.

## II. Subpoena Procedure

■ Petitioner's principal contention is that the State Bar's subpoena procedure used to obtain his trust account records violated the privacy clause of the California Constitution (art. I, § 1). Petitioner asserts that the State Bar failed properly to balance the privacy rights of petitioner and his clients against the bar's own need to examine these records and that, accordingly, the records were improperly seized and should have been ordered suppressed.

We first review the facts applicable to this contention. On March 8, 1976, Payne reported to the State Bar his difficulty in obtaining from petitioner Payne's share of the settlement proceeds. Petitioner was notified of Payne's complaint and soon thereafter petitioner remitted the proper funds to Payne. Payne thereupon requested that the State Bar withdraw his complaint and terminate the proceedings. The State Bar informed Payne that despite his withdrawal of the complaint following restitution, the State Bar had a continuing obligation to investigate the alleged misconduct.

Despite his unwillingness to pursue the matter, Payne did provide the State Bar with some general information regarding his association with petitioner, and Payne's new attorney sent to the State Bar his own file on the matter. On October 7, 1977, however, Payne notified the State Bar that "I want to claim my right to privacy. I do not want any of the files, or financial records of my case disclosed to anyone." Notwithstanding Payne's claim of privacy, on August 6, 1979, the State Bar issued its subpoena to the Sumitomo Bank, where the trust account at issue was located, calling for the production of copies of monthly statements, deposit slips and checks from the trust account for the period July 3, 1974, to June 30, 1976. Attached to the subpoena was a declaration by a State Bar examiner attesting to the need for production of these records. Copies of the subpoena were issued to the bank and petitioner on August 7, 1979. Pursuant to rule 302 of the Rules of Procedure of the State Bar, petitioner was granted 15 days in which to move to quash the subpoena. He failed to do so.

On August 23, 1979, a second subpoena was issued requesting the production of copies of cancelled checks written on petitioner's trust account. No motion to quash was filed.

On February 22, 1980, the hearing panel granted petitioner leave to file a belated motion to quash the two subpoenas. After oral argument, the motion was denied on October 24, 1980.

The State Bar obtained the records at issue pursuant to section 6069, subdivision (a), of the Business and Professions Code, which authorizes the State Bar to subpoena an attorney's financial records regarding his trust accounts. (See also rules 300-324, Rules of Proc. of State Bar.) However, because mere compliance with a statute cannot justify an improper invasion of constitutional rights (see *Hale* v. *Bohannon* (1952) 38 Cal.2d 458, 471 [241 P.2d 4]), we discuss petitioner's constitutional arguments.

The constitutional right of privacy may immunize from disclosure financial records in the custody of third parties. Thus, in *Burrows* v. *Superior Court* (1974) 13 Cal.3d 238, 243 [118 Cal.Rptr. 166, 529 P.2d 590], we held that a bank customer has a reasonable expectation of privacy with respect to financial information disclosed to his bank, and that it was improper for the bank to release such information to third party investigators, at least in the absence of a subpoena or other appropriate legal compulsion. (Significantly, in *Burrows*, the bank customer was an attorney who was under investigation for misappropriating clients' funds.) Subsequently, in *Valley Bank of Nevada* v. *Superior Court* (1975) 15 Cal.3d 652, 658 [125 Cal.Rptr. 553, 542 P.2d 977], we concluded that a bank must notify its customers of the pendency of civil discovery proceedings directed at disclosure of customer records, in order to afford the customer an opportunity to assert his privacy interests.

Petitioner seeks to apply the *Burrows* and *Valley Bank* reasoning to a client's financial records in the custody of an attorney. He notes the similarity between financial records pertaining to a personal bank account and records concerning a trust account maintained for the benefit of third persons. In either case, disclosure could provide a "virtual current biography" of the person whose financial dealings were revealed. (*Burrows, supra*, 13 Cal.3d at p. 247; see also *White* v. *Davis* (1975) 13 Cal.3d 757, 775 [120 Cal.Rptr. 94, 533 P.2d 222] ["compelling interest" required to justify invasion of privacy]; *People* v. *Doyle* (1977) 77

Cal.App.3d 126, 128 [141 Cal.Rptr. 639] [no relation to petitioner Doyle], holding that a warrantless seizure of a client's records from an attorney's files violated the client's reasonable expectation of privacy and rendered the records inadmissible in an insurance fraud trial.)

(3) Assuming, however, that petitioner's clients had a reasonable expectation of privacy regarding their financial information contained in petitioner's files, that privacy interest is not absolute but must be balanced against the need for disclosure. (See *Valley Bank, supra,* 15 Cal. 3d at p. 657; *Board of Trustees* v. *Superior Court* (1981) 119 Cal. App.3d 516, 525 [174 Cal.Rptr. 160].) In a recent case, the Court of Appeal discussed this balancing approach within the somewhat similar context of an administrative agency's demand for confidential patient records in the files of a physician under investigation for alleged incompetence. (*Board of Medical Quality Assurance* v. *Gherardini* (1979) 93 Cal.App.3d 669 [156 Cal.Rptr. 55].) The court acknowledged that, although the patients had a protectible privacy interest in these records, that interest, in a given case, might be outweighed by the public interest in assuring competent medical treatment. (*Id.,* at p. 679.) The *Gherardini* court held that administrative review of a patient's confidential files could be based either upon his consent or waiver, or upon a showing of "good cause," including a demonstration that the materials were relevant and material to the board's inquiry, and that the patient's privacy would not be unduly invaded by disclosure. (*Id.,* at pp. 680-681.)

 Our independent review of the record herein convinces us that the State Bar's subpoena procedures complied with the foregoing authorities. Although the State Bar was unable to secure client Payne's consent to disclosure of his records, good cause for such disclosure clearly existed. The State Bar had a manifest need to review pertinent financial records while investigating a charge of misappropriation of client funds. In the usual case that need must override the client's refusal to consent to such disclosure. Without review of the actual trust fund records the State Bar would be severely handicapped in the discharge of its statutory obligations. It would be unable to verify the accuracy of the charge or to sustain its burden of proof in disciplinary proceedings primarily aimed at protecting the public from professional misconduct.

Moreover, adequate safeguards exist to assure that clients' interests are not unduly infringed. The affidavit in support of a subpoena seeking financial or trust fund records must (1) describe the requested records "with particularity"; (2) show that disclosure of the records is "consis-

tent with the scope and requirements of the proceeding giving rise to the request"; and (3) establish "reasonable cause to believe that the records sought pertain to trust funds which a member must maintain in accordance with the Rules of Professional Conduct." (Rule 300, Rules Proc. of State Bar.) In this connection, petitioner does not suggest that the State Bar failed to comply with the foregoing provision, and our review of the record suggests that the requirements were met. The information sought by the State Bar consisted of bank statements, deposit slips and cancelled checks pertaining to the trust account under scrutiny. These materials were directly relevant to the matter under investigation—petitioner's possible misuse or misappropriation of his client's funds.

In addition to the procedural protections afforded by rule 300, all State Bar disciplinary proceedings, of course, are conducted in strict confidence, thereby assuring that private financial or other information contained in clients' files and records will not be made public nor divulged to third persons. (See rules 220-228, Rules Proc. of State Bar.)

For the future guidance of the State Bar and its membership, we commend the adoption of a practice, consistent with the principles expressed by us in *Valley Bank of Nevada* v. *Superior Court, supra*, 15 Cal.3d 652, 658, whereby the State Bar notifies complaining clients that their records are sought in connection with a pending investigation, thus affording the clients an opportunity to object to disclosure or to assert any privacy interests in, or unusual circumstances surrounding, such material. If possible, the State Bar also should obtain the clients' consent to disclosure. Nonetheless, if such consent is withheld, disclosure may be ordered upon a showing of good cause, based upon a balancing of the competing interests, in the manner hereinabove described.

We conclude that the State Bar acted properly in issuing and enforcing its subpoena.

### III. Petitioner's False Testimony

Petitioner contends that the evidence was insufficient to support a finding that he gave false testimony in the prior disciplinary proceeding. Petitioner had testified under oath on January 17, 1975, and on April 5, 1976, that he had not handled any trust funds since the summer of 1974, when, after learning of a misappropriation charge against him, he made arrangements to have his associate assume control over

his trust account. Petitioner agreed to statements that there was "no opportunity . . . for any mishandling of trust funds" and that "as to all current business which may find usage of the trust account necessary, [the associate] alone is the signatory."

The evidence in the present proceeding indicates that, contrary to the above statements, he opened a new trust account during that same period and regularly deposited and disbursed funds from the account for approximately two years. Petitioner denied at the April 1976 hearing that he had a trust account, yet at the hearing in the present proceeding petitioner admitted that he did maintain such an account.

Petitioner now argues that he did not testify falsely because *on the dates of the hearings* in the prior disciplinary proceeding the account was being used for nonclient transactions of a personal or business nature. While it may be true that on those particular hearing dates the account was used for nonclient purposes, the record reflects that the account was generally used as a depository of client trust funds. Bank records show that less than three weeks prior to his testimony at the April 1976 hearing petitioner deposited in his trust account a settlement check from the Hartford Insurance Company, payable to "Norman E. Steele and Eugene W. Doyle, his attorney" in the amount of $10,000. On the same date, petitioner also deposited in the same account two checks drawn in favor of "Edward P. O'Haire, Administrator of the Estate of Michael Lazar." Petitioner testified that he maintained control over this account and that the account was used for trust purposes both prior to January 1974 and thereafter continuing to April 1976.

Petitioner's contention that he was using his account for purely nontrust purposes, even if true, is of little help to him in these proceedings, because such use of a trust account violates rule 8-101 of the Rules of Professional Conduct, which disallows commingling of personal and trust funds. Petitioner argues that at the time the account was used as a personal account, no client funds were on deposit and therefore, no commingling occurred. It is urged that rule 8-101 does not prevent an attorney from using for personal purposes an account formerly used as a trust fund, and still labelled as such. Rule 8-101 provides, however, that client funds "shall be deposited in one or more identifiable bank accounts labelled 'Trust Account,' 'Client's Funds Account' or words of similar import . . . and *no funds belonging to the member of the State Bar* or firm of which he is a member *shall be deposited therein* or otherwise commingled therewith . . . ." (Italics added.) The rule abso-

lutely bars use of the trust account for personal purposes, even if client funds are not on deposit. Because petitioner used the account while it was still denominated a trust account, even if he no longer intended to use it for trust purposes, rule 8-101 was violated. The rule leaves no room for inquiry into the depositor's intent.

In a disciplinary action, we have held that a petitioner has the burden of showing that the findings of the State Bar are unsupported by the evidence. (*Gallagher* v. *State Bar* (1981) 28 Cal.3d 832, 837 [171 Cal. Rptr. 325, 622 P.2d 421].) In the present case, petitioner failed to carry his burden of showing that he made no false statements during the prior disciplinary action.

## IV. EXCESSIVE DISCIPLINE

■ Petitioner's final contention is that the discipline recommended by the State Bar is excessive in light of the nature of his misconduct and the mitigating circumstances. The principles which guide our inquiry are well settled. ■ The purpose of disciplinary proceedings is not primarily to punish attorneys but to examine their fitness to practice, an inquiry undertaken for the protection of the public, the courts and the legal profession. (*In re Petty* (1981) 29 Cal.3d 356, 360 [173 Cal.Rptr. 461, 627 P.2d 191].)

■ Misappropriation of trust funds is a most serious violation of professional conduct, is likely to undermine public confidence in the legal profession and, when committed, merits severe discipline. (*Fitzpatrick* v. *State Bar* (1977) 20 Cal.3d 73, 88 [141 Cal.Rptr. 169, 569 P.2d 763].) In the absence of extenuating circumstances, misappropriation of client property may well warrant disbarment. (*Sevin* v. *State Bar* (1973) 8 Cal.3d 641, 646 [105 Cal.Rptr. 513, 504 P.2d 449].) ■ Petitioner has a prior disciplinary record involving a misappropriation offense. In the instant case, over $20,000 was misappropriated. In addition, petitioner's false statements are serious, aggravating factors. Under certain circumstances, false testimony before the State Bar may constitute an even greater offense than misappropriation of clients' funds. (*Worth* v. *State Bar* (1978) 22 Cal.3d 707, 711 [150 Cal.Rptr. 273, 586 P.2d 588].) The petitioner in *Worth* was disbarred based upon misconduct similar to that of petitioner in the present case. While still on probation for misappropriating a client's funds, Worth again misappropriated funds and, additionally, made false statements to the bar at the first disciplinary proceeding. (*Id.*, at p. 711.)

In *Worth*, we found no mitigating circumstances. ▮ In the present case, there is some evidence that petitioner suffered considerable financial and domestic difficulty during the period in which the misconduct occurred. Such problems, on occasion, may be considered in mitigation of discipline for professional misconduct. (*Bradpiece* v. *State Bar* (1974) 10 Cal.3d 742, 747 [111 Cal.Rptr. 905, 518 P.2d 337].)

Petitioner further submits that he made full restitution to Payne and that this factor should be considered as a mitigating circumstance. We have held that restitution made only under the pressure of a forthcoming disciplinary investigation is entitled to no weight as a mitigating circumstance. (*Fitzpatrick* v. *State Bar, supra,* 20 Cal.3d at p. 88.) However, the fact that restitution was made after a complaint was filed but before proceedings began may be given some favorable consideration. (*Bradpiece* v. *State Bar, supra,* 10 Cal.3d at p. 748.) Here, restitution was made after Payne's new attorney had written two letters to petitioner requesting that he forward the settlement proceeds. Petitioner was aware that a complaint had been filed with the State Bar when the settlement proceeds were finally refunded.

We reject as an additional mitigating circumstance petitioner's contention that the Navy held a $5,500 lien against the funds and that, accordingly, petitioner was prevented from forwarding to Payne the settlement proceeds until the lien was lifted in November 1975. Petitioner's assertions, even if correct, afford no relief. Four months elapsed from the time the lien was discharged until the funds were finally sent to Payne. Moreover, at one point in his testimony, petitioner admitted that he could not forward the settlement funds due Payne in November 1975 because he had misappropriated the money for his personal use.

In making a determination as to the appropriate degree of discipline, we have noted that "The imposition of penalty does not issue from a fixed formula but from a balanced consideration of the relevant factors." (*Bernstein* v. *State Bar* (1972) 6 Cal.3d 909, 919 [101 Cal.Rptr. 369, 495 P.2d 1289].) In the present case, we must base our decision upon the seriousness of the offense, petitioner's prior disciplinary record for a similar offense, and his false testimony given during the prior proceeding, balanced against the mitigating factors petitioner has brought to our attention. Based on these factors, the review department found that two years' actual suspension was warranted. We note that four of eleven members on the review department panel dissented from that finding on the basis that a greater period of actual suspension should be

imposed. ■ While we look to the State Bar's recommendation, we are not bound to follow it. (*Sturr* v. *State Bar* (1959) 52 Cal.2d 125, 127 [338 P.2d 897].) ■ The record before us fully warrants the disbarment of petitioner based upon his prior record, his misappropriation of substantial trust funds, and his false testimony, but we defer reluctantly in this instance to the judgment of the review department and accept its recommendations as appropriate.

Accordingly, it is ordered that Eugene Doyle be suspended from the practice of law for five years, that such suspension be stayed upon the conditions specified in the review department order, including two years' actual suspension, that Mr. Doyle take and pass the Professional Responsibility Examination prior to the end of the period of actual suspension, and that he comply with subdivisions (a) and (c) of rule 955 of the California Rules of Court within 30 and 40 days, respectively, after the effective date of this order. This order shall be effective 30 days after the filing of this opinion.

NEWMAN, J.—I concur, but I would do more than merely "commend the adoption of a practice ... whereby the State Bar notifies complaining clients that their records are sought...." (See pt. II of the maj. opn., penultimate paragraph.)

The opinion in *Board of Medical Quality Assurance* v. *Gherardini* (1979) 93 Cal.App.3d 669 [156 Cal.Rptr. 55] persuades me that the Bar, to protect clients' privacy rights, should restrain its officers and employees with more zeal than seems to be reflected in the many exceptions to the confidentiality provisions set forth in Nos. 220 and 221 of its Rules of Procedure. (See, e.g., rule 227 regarding "Cooperation with other agencies.") Might it not be appropriate, perhaps, to experiment with privacy instructions comparable to those authorized by Code of Civil Procedure section 1987.1?

Reynoso, J., concurred.

On August 25, 1982, the opinion was modified to read as printed above.