101 Cal.Rptr.2d 916 (2000)
85 Cal.App.4th 345
JEFFREY H., Plaintiff and Appellant,
v.
IMAI, TADLOCK & KEENEY et al., Defendants and Respondents.
No. A087167.
Court of Appeal, First District, Division One.
December 8, 2000.
As Modified January 3, 2001.
*918 Jeffrey H., in pro. per., for Plaintiff and Appellant.
Murphy, Pearson, Bradley & Feeney, Timothy J. Halloran, San Francisco, Aaron K. McClellan, for Defendants and Respondents.
*917 SWAGER, J.
In this pro per appeal, Jeffrey H.[1] appeals a judgment dismissing his complaint against the law firm, Imai, Tadlock & Keeney, two attorneys in the firm, Robert Keeney and Mark Misaghi, and a secretary in the firm, Heather Hutchison (hereafter collectively the respondent law firm), which was entered on an order sustaining the respondent law firm's demurrer to the first amended complaint. We reverse the judgment dismissing the cause of action for invasion of privacy and affirm the judgment as to all remaining causes of action.

PROCEDURAL BACKGROUND
The first amended complaint alleges a detailed statement of facts followed by a statement of legal grounds for claims against the respondent law firm, a legal services firm, and three related health care providers, Kaiser Foundation Hospitals, Inc., The Permanente Medical Group, Inc. and Kaiser Foundation Health Plan, Inc. (hereafter collectively Kaiser Foundation Hospital). Insofar as it relates to the respondent law firm, we read the first amended complaint as attempting to state a cause of action for invasion of privacy under California Constitution, article I, section 1, a statutory cause of action under Health and Safety Code section 120980, and causes of action for negligent and intentional infliction of emotional distress.
The first amended complaint alleges that appellant was injured on August 23, 1995, when his vehicle was struck in the rear by a leased vehicle. He filed a suit for personal injuries in San Francisco Superior Court against the driver of the other vehicle and the company that leased it. The defendants in that case were represented by the respondent law firm.
On November 25, 1996, the respondent law firm issued a subpoena for medical records from Kaiser Foundation Hospital and hired a copying service, Major Legal Services, to obtain copies of the medical records. Appellant's hospital records were subsequently copied and delivered to the respondent law firm. Among the records delivered to the firm were several documents, marked at the bottom "CONFIDENTIAL: Do Not Copy Without Specific Authorized Consent," which disclosed the results of appellant's HIV tests. Appellant alleges on information and belief that the contents of the records were disclosed to the employees and members of the respondent law firm and their clients in the personal injury suit.
The personal injury action was referred to arbitration under circumstances not revealed by the record. On May 1, 1997, appellant received a "Supplemental Notice of Intention to Introduce Evidence at Arbitration Hearing Pursuant to California Rules of CourtRule 1613" (hereafter Supplemental Notice) to which was attached those medical records from Kaiser Foundation Hospital that the respondent law firm proposed to offer into evidence in the arbitration. Upon inspection of these medical records, appellant discovered confidential documents disclosing the results of HIV tests that he had taken at Kaiser Foundation Hospital.
*919 On November 10, 1997, appellant wrote a letter to a member of the respondent law firm informing him that these medical records relating to his HIV tests had been improperly disclosed and demanding that "[a]ll copies of any such documents, or references thereto, ... be returned to [him]." In reply, the attorney returned certain documents to appellant with a letter, in which he stated, "I do not believe I have any other documents concerning the results of these tests. If I subsequently locate any such documents, I will forward them to you."
Contrary to the assurances expressed in the letter, the respondent law firm identified two documents disclosing the results of appellant's HIV tests in a collection of arbitration exhibits. At the arbitration hearing on December 3, 1997, the firm delivered these two documents to the arbitrator. Appellant claims that a willful intent to disclose the documents may be inferred from the process of selection of documents for the arbitration. Appellant's file at Kaiser Foundation Hospital contains 400 pages of documents; 12 of these documents were contained in the Supplemental Notice, including four related to appellant's HIV test results; and eight of these documents were introduced in the arbitration hearing, including two related to the HIV tests.
In a cross-complaint, Kaiser Foundation Hospital alleges that the documents disclosing HIV status were improperly copied and delivered to the respondent law firm, but it places the responsibility on the copying service and the respondent law firm: "Prior to copying the records, Kaiser expressly told Major Legal Services not to copy records that were marked 'CONFIDENTIAL'. These records were tabbed with paper clips. In the instruction sheet that was provided to Major Legal Services' employee, Kaiser expressly stated that these records were not to be copied. Unfortunately, Major Legal Services disregarded Kaiser's instructions and copied the medical records marked `CONFIDENTIAL'. These records contained [Jeffrey H.'s] HIV test results. [¶] After copying [Jeffrey H.'s] HIV test results, Major Legal Services delivered the records to ... [the respondent law firm]. Instead of immediately returning [Jeffrey H.'s] confidential medical records which, as attorneys, the law firm knew were not discoverable under Health and Safety Code section 120980 et seq., defendant law firm disseminated the information contained therein to their clients and attempted to use the HIV test result records at arbitration."

DISCUSSION
"In our review of this judgment of dismissal sustaining a demurrer without leave to amend, we are guided by well-settled principles governing the testing of the sufficiency of a complaint. Although a demurrer makes no binding judicial admissions, it provisionally admits all material issuable facts properly pleaded, unless contrary to law or to facts of which a court may take judicial notice.... [Citations.] To the extent there are factual issues in dispute, however, this court must assume the truth not only of all facts properly pled, but also of those facts that may be implied or inferred from those expressly alleged in the complaint." (City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc. (1998) 68 Cal.App.4th 445, 459, 80 Cal.Rptr.2d 329; see also Blank v. Kirwan (1985) 39 Cal.3d 311, 318, 216 Cal. Rptr. 718, 703 P.2d 58; Serrano v. Priest (1971) 5 Cal.3d 584, 591, 96 Cal.Rptr. 601, 487 P.2d 1241.)
In accordance with these principles, our analysis will be governed by factual assumptions, derived from the allegations of the complaint, that may or may not be borne out by later evidence. First, we assume that the respondent law firm knew that the documents disclosing appellant's HIV status had been improperly copied from medical records of the Kaiser Foundation Hospital. Subject to certain limited exceptions. Health and Safety Code section *920 120980 broadly prohibits disclosure of the results of an HIV test "to any third party, in a manner that identifies or provides identifying characteristics of the person to whom the test results apply, except pursuant to a written authorization...." The first amended complaint contains nothing suggesting the existence of a proper written authorization or the applicability of any exception to the broad prohibition of section 120980 but rather alleges that the documents in question displayed markings identifying their confidential nature.
Secondly, the bare allegation of a rearend automobile collision does not provide a reasonable basis for inferring a connection between the injuries suffered in the collision and appellant's HIV diagnosis. At this stage of the proceedings, we must assume that appellant's HIV test results had no relevance to the factual issues raised by appellant's personal injury action.
Thus, the issues in this appeal revolve around the use in arbitration of improperly released documents containing confidential information that had no relevance to the matters adjudicated in the arbitration. We will examine first the issues presented by appellant's claim of violation of his right to privacy under the California Constitution, article I, section 1.

A Constitutional Right to Privacy

1. Elements of Cause of Action

In 1972, California voters amended article I, section 1, of the state Constitution to include the right of privacy among the "inalienable" rights of "all people." The provision has been repeatedly construed to provide California citizens with privacy protections broader than those recognized by the federal Constitution. (American Academy of Pediatrics v. Lungren (1997) 16 Cal.4th 307, 327-328, 66 Cal.Rptr.2d 210, 940 P.2d 797.) "[T]he amendment is intended to be self-executing, i.e., ... the constitutional provision, in itself, `creates a legal and enforceable right of privacy for every Californian.'" (White v. Davis (1975) 13 Cal.3d 757, 775, 120 Cal.Rptr. 94, 533 P.2d 222, citations omitted.) Furthermore, "the state privacy right protects against invasions of privacy by private citizens as well as the state." (Chico Feminist Women's Health Center v. Scully (1989) 208 Cal.App.3d 230, 242, 256 Cal.Rptr. 194; Wilkinson v. Times Mirror Corp. (1989) 215 Cal.App.3d 1034, 1040-1044, 264 Cal.Rptr. 194.)
In Hill v. National Collegiate Athletic Assn. (1994) 7 Cal.4th 1, 39-40, 26 Cal. Rptr.2d 834, 865 P.2d 633, our high court established an analytical framework for evaluating a cause of action for invasion of privacy "[A] plaintiff alleging an invasion of privacy in violation of the state constitutional right to privacy must establish each of the following: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." We turn now to each of these three elements.
With respect to the first element, it has long been recognized that "[t]he 'zones of privacy' created by article I, section 1, extend to the details of one's medical history." (Cutter v. Brownbridge (1986) 183 Cal.App.3d 836, 842, 228 Cal. Rptr. 545; Jones v. Superior Court (1981) 119 Cal.App.3d 534, 548-550, 174 Cal.Rptr. 148.) Shortly after enactment of article I, section 1 of the California Constitution, the court in Board of Medical Quality Assurance v. Gherardini (1979) 93 Cal.App.3d 669, 678, 156 Cal.Rptr. 55 observed, "A person's medical profile is an area of privacy infinitely more intimate, more personal in quality and nature than many areas already judicially recognized and protected." (Quoted in Hill v. National Collegiate Athletic Assn., supra, 7 Cal.4th at p. 41, 26 Cal.Rptr.2d 834, 865 P.2d 633; see also Pettus v. Cole (1996) 49 Cal. App.4th 402, 441, 57 Cal.Rptr.2d 46; Gross v. Recabaren (1988) 206 Cal.App.3d 771, 782, 253 Cal.Rptr. 820.) Accordingly, "[t]here can be no doubt that disclosure of *921 HIV positive status may under appropriate circumstances be entitled to protection under article I, section 1. The condition is ordinarily associated either with sexual preference or intravenous drug uses. It ought not to be, but quite commonly is, viewed with mistrust or opprobrium. Under the test of tortious invasion of privacy, it is clearly a `private fact' of which the disclosure may `be offensive and objectionable to a reasonable [person] of ordinary sensibilities.' [Citation.]" (Urbaniak v. Newton (1991) 226 Cal.App.3d 1128, 1140, 277 Cal.Rptr. 354.)
A reasonable expectation of privacythe second essential element of a state constitutional cause of action for invasion of privacyrequires consideration of "the actual circumstances of disclosure...." (Urbaniak v. Newton, supra, 226 Cal. App.3d at p. 1141, fn. 5, 277 Cal.Rptr. 354.) "Even when a legally cognizable privacy interest is present, other factors may affect a person's reasonable expectation of privacy. For example, advance notice of an impending action may serve to `"limit [an] intrusion upon personal dignity and security"' that would otherwise be regarded as serious. [Citation.] [¶] In addition, customs, practices, and physical settings surrounding particular activities may create or inhibit reasonable expectations of privacy." (Hill v. National Collegiate Athletic Assn., supra, 7 Cal.4th at p. 36, 26 Cal.Rptr.2d 834, 865 P.2d 633.)
Respondent law firm argues that appellant cannot have any reasonable expectation of privacy relating to his medical records because he brought an action for personal injury putting his physical condition in issue. In Heller v. Norcal Mutual Ins. Co. (1994) 8 Cal.4th 30, 43-44, 32 Cal.Rptr.2d 200, 876 P.2d 999, the court held that a malpractice plaintiff could not reasonably expect information to "remain confidential" that "would have been inevitably discovered" in the course of the litigation. But as noted earlier, the first amended complaint provides no basis for inferring that appellant's HIV status "relates in any way to the physical or emotional injuries" for which he sought recovery in the personal injury action. (Britt v. Superior Court (1978) 20 Cal.3d 844, 862, 143 Cal.Rptr. 695, 574 P.2d 766.)
We consider that the statutory scheme protecting the confidentiality of HIV test results in fact served to confirm appellant's reasonable expectations of confidentiality. As we have noted, Health and Safety Code section 120975 et seq., regulates, and severely restricts, the disclosure of HIV test results. Similarly, the first amended complaint alleges facts, i.e., the exchange of letters between appellant and counsel, that may have provided appellant with assurance that his privacy interest would be respected.
With regard to the third element of the cause of action, Hill v. National Collegiate Athletic Assn., supra, 7 Cal.4th at p. 37, 26 Cal.Rptr.2d 834, 865 P.2d 633, observes, "`Complete privacy does not exist in this world except in a desert, and anyone who is not a hermit must expect and endure the ordinary incidents of the community life of which he is a part.' [Citation.] Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right. Thus, the extent and gravity of the invasion is an indispensable consideration in assessing an alleged invasion of privacy."
We begin by noting that the alleged invasion of privacy here concerned "the core value" protected by article I, section 1informational privacy. (Pettus v. Cole, supra, 49 Cal.App.4th at p. 440, 57 Cal. Rptr.2d 46.) Appellant claims to be aggrieved by the unauthorized "circulation of personal information" gathered by a private business providing health care. (White v. Davis, supra, 13 Cal.3d at p. 774, 120 Cal.Rptr. 94, 533 P.2d 222.) Moreover, this court noted in Urbaniak v. Newton, supra, 226 Cal.App.3d at pp. 1140 1141, 277 Cal.Rptr. 354, the unauthorized disclosure of HIV-positive test results undermines the "public interest" in encouraging *922 patients to submit to HIV testing and to make needed disclosures of HIV-positive status during medical treatment. Additionally, the pleadings here suggest the disclosure of private information in a manner tending to compromise appellant's right of access to the courts. The price of access to the courts or an arbitration forum should not include the risk of disclosures of embarrassing personal information having no connection with the dispute at issue.
In light of these policies, appellant has adequately pleaded a violation of his constitutional right to privacy. The first amended complaint alleges the improper release of hospital records disclosing appellant's HIV status, the disclosure of the documents by the respondent law firm in knowing disregard of their legally protected confidentiality, and the use of the documents in a proceeding to which they had no relevance.

2. The Litigation Privilege

We turn now to a subject that we addressed 14 years ago in Cutter v. Brownbridge, supra, 183 Cal.App.3d 836, 228 Cal. Rptr. 545the application of the litigation privilege of Civil Code section 47, subdivision (b) (then section 47(2)), to a constitutional cause of action for invasion of privacy. We held in Cutter that the application of the litigation privilege in this constitutional context calls for a balancing of interests, despite the unqualified application of the privilege in other legal contexts. We will review first the general principles governing the litigation privilege and then consider the background of the Cutter decision and its continued viability.
Civil Code section 47 accords an immunity for statements made in a number of contexts related to legislative, judicial, or other official proceedings. We are concerned here only with statements that come within the aegis of section 47, subdivision (b)(2), "which provides an absolute privilege to statements made in `any judicial proceeding'the provision more commonly referred to as the `litigation privilege.'" (Moore v. Conliffe (1994) 7 Cal.4th 634, 641, 29 Cal.Rptr.2d 152, 871 P.2d 204.) The Moore decision established authoritatively that the litigation privilege applies to statements made in a private, contractual arbitration proceeding. There can therefore be no doubt that it applies to the present litigation, which was commenced by a complaint for personal injuries and later referred to arbitration.
In Silberg v. Anderson (1990) 50 Cal.3d 205, 211-212, 266 Cal.Rptr. 638, 786 P.2d 365, our Supreme Court observed that the privilege "has been given broad application. Although originally enacted with reference to defamation [citation], the privilege is now held applicable to any communication, whether or not it amounts to a publication [citations].... Further, it applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved.... [¶] The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." (See also Rubin v. Green (1993) 4 Cal.4th 1187, 1193-1196, 17 Cal. Rptr.2d 828, 847 P.2d 1044; Moore v. Conliffe, supra, 7 Cal.4th at pp. 640-641, 29 Cal.Rptr.2d 152, 871 P.2d 204.)
The purpose of the privilege, according to Silberg v. Anderson, supra, 50 Cal.3d 205, 266 Cal.Rptr. 638, 786 P.2d 365, "is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." (Id. at p. 213, 266 Cal.Rptr. 638, 786 P.2d 365.) The decision continues: the privilege "further promotes the effectiveness of judicial proceedings by encouraging attorneys to zealously protect their clients' interests. `[I]t *923 is desirable to create an absolute privilege ... not because we desire to protect the shady practitioner, but because we do not want the honest one to have to be concerned with [subsequent derivative] actions....' [Citation.]" (Id. at p. 214, 266 Cal.Rptr. 638, 786 P.2d 365.) "[I]n immunizing participants from liability for torts arising from communications made during judicial proceedings, the law places upon litigants the burden of exposing during trial the bias of witnesses and the falsity of evidence, thereby enhancing the finality of judgments and avoiding an unending roundelay of litigation, an evil far worse than an occasional unfair result." (Ibid.)
The litigation privilege, as enunciated in Silberg, clearly applies to claims of tortious invasion of privacy. The decision in Ribas v. Clark (1985) 38 Cal.3d 355, 364, 212 Cal.Rptr. 143, 696 P.2d 637, in fact so holds, though it touches on the point briefly in discussion of a minor issue. (Cf. Kilgore v. Younger (1982) 30 Cal.3d 770, 782, 180 Cal.Rptr. 657, 640 P.2d 793.) A cause of action under California Constitution, article I, section 1, which neither Silberg nor Ribas considered, however, presents distinct considerations.
The right to privacy conferred by the constitution is not absolute, and the courts have construed article I, section 1, as calling for a balancing of the privacy interest against competing interests to determine if the right may be invaded. As explained in Hill v. National Collegiate Athletic Assn., supra, 7 Cal.4th at p. 37, 26 Cal.Rptr.2d 834, 865 P.2d 633, "[t]he diverse and somewhat amorphous character of the privacy right necessarily requires that privacy interests be specifically identified and carefully compared with competing or countervailing privacy and nonprivacy interests in a `balancing test.'" The Hill court noted that some decisions "use `compelling interest' language; others appear to rely on balancing tests giving less intense scrutiny to nonprivacy interests." (Id. at p. 34, 26 Cal.Rptr.2d 834, 865 P.2d 633.) Decisions requiring a "compelling interest" involve "an obvious invasion of an interest fundamental to personal autonomy, ... If, in contrast, the privacy interest is less central, or in bona fide dispute, general balancing tests are employed." (Ibid., fn. omitted; see also Pettus v. Cole, supra, 49 Cal.App.4th at p. 439, 57 Cal. Rptr.2d 46.)
Two of the decisions, which Hill cited as using a "general balancing test," involved discovery procedures. In Valley Bank of Nevada v. Superior Court (1975) 15 Cal.3d 652, 125 Cal.Rptr. 553, 542 P.2d 977, the defendant in a civil action noticed the deposition of a bank officer with a request for records pertaining to certain bank customers. After finding the requested information to be relevant to the defendant's defense, the court "indulge[d] in a careful balancing of the right of civil litigants to discover relevant facts, on the one hand, with the right of bank customers to maintain reasonable privacy regarding their financial affairs, on the other." (Id, at p. 657, 125 Cal.Rptr. 553, 542 P.2d 977.) The court struck this "balance between the competing considerations" by requiring the bank to notify its customers of the nature of the discovery request and giving them "a fair opportunity" to assert their privacy interest prior to disclosing customer's bank records. (Id. at p. 658, 125 Cal.Rptr. 553, 542 P.2d 977.) A later decision, Doyle v. State Bar (1982) 32 Cal.3d 12, 18-21, 184 Cal.Rptr. 720, 648 P.2d 942, applied the Valley Bank holding to financial records in the custody of an attorney. It found that the subpoena procedures of the state bar possessed sufficient safeguards to permit discovery of the records but recommended that the State Bar follow the Valley Bank practice of notifying clients of discovery requests affecting their files.
Doyle relied in part on a decision involving medical records, Board of Medical Quality Assurance v. Gherardini, supra, 93 Cal.App.3d 669, 156 Cal.Rptr. 55. In investigating the competence of a licensed physician, the state medical board *924 issued a subpoena for the complete medical-hospital records of five patients of the physician. The court engaged in a similar balancing of competing interests: "The constitutional provisions here reviewed do not prohibit all incursions into the individual zone of privacy but rather require that any such intervention be justified by a compelling state interest. The resolution of these insistent issues involves a balancing of the respective interests...." (Id at p. 680, 156 Cal.Rptr. 55.) Though holding that the subpoena was overly broad, the court made clear that a more narrowly drawn order might be upheld "upon a showing of `good cause,' including a demonstration that the materials were relevant and material to the board's inquiry, and that the patient's privacy would not be unduly invaded by disclosure." (Doyle v. State Bar, supra, 32 Cal.3d at p. 20, 184 Cal.Rptr. 720, 648 P.2d 942.)
Relying in part on Valley Bank of Nevada, Doyle, and Gherardini, our decision in Cutter v. Brownbridge, supra, 183 Cal. App.3d 836, 228 Cal.Rptr. 545, employed a balancing of interest analysis to determine whether a constitutional claim of invasion of privacy was barred by the litigation privilege. A psychotherapist voluntarily executed a declaration providing damaging personal information about the plaintiff gleaned through therapy sessions. The plaintiffs wife introduced the declaration in a child custody proceeding. When the plaintiff brought an action against the psychotherapist alleging inter alia a breach of his constitutional right of privacy, the trial court sustained a demurrer without leave to amend. On appeal, this court assumed "that the allegations of the complaint state causes of action and that relief would be foreclosed by application of section 47, subdivision 2, unless an alleged violation of a constitutional right requires an exception from that statute." (Id at p. 841, 228 Cal.Rptr. 545, fn. omitted.)
Reversing the judgment, we saw the need to engage in "a balancing of the policy underlying Civil Code section 47, subdivision 2, with [the plaintiffs] right to maintain the privacy of communication with his psychotherapist." (Cutter v. Brownbridge, supra, 183 Cal.App.3d at p. 844, 228 Cal.Rptr. 545, fn. omitted.) The psychotherapist-patient privilege statutes in Evidence Code, section 1010 et seq., in fact provided "a comprehensive scheme by which the need for ascertaining the truth in judicial proceedings can be balanced with a patient's right to privacy." (Cutter v. Brownbridge, supra, at p. 845, 228 Cal. Rptr. 545.) Thus, a psychotherapist who claims the statutory privilege satisfies constitutional privacy concerns and is immunized by Civil Code section 47 from any liability for disclosures in a judicial proceeding, but "a psychotherapist who volunteers information concerning a patient obtained in connection with their relationship, does so at his or her peril." (
Cutter v. Brownbridge, supra, at p. 847, 228 Cal. Rptr. 545.)
Since the defendant psychotherapist in Cutter executed the declaration without seeking a judicial ruling on its admissibility, he was not protected by the litigation privilege. The decision concluded, "We have determined that the constitutional right to privacy outweighs the policies underlying the judicial proceedings immunity when private material is voluntarily published, without resort to a prior judicial determination." (Cutter v. Brownbridge, supra, 183 Cal.App.3d at p. 848, 228 Cal.Rptr. 545.)
Nine years ago, we applied our analysis in Cutter to facts similar to the present case in Urbaniak v. Newton, supra, 226 Cal.App.3d 1128, 277 Cal.Rptr. 354. During a physical examination ordered by a workers' compensation insurance carrier, the plaintiff disclosed his HIV-positive status to a nurse after certain sharp electrodes drew blood. The examining physician relied on this disclosure in a report to the insurance carriers recommending denial of insurance coverage. We regarded the communication as coming within the protections of California Constitution, article *925 I, section 1, but saw a valid claim only against the examining physician. In our view, the insurance company and its attorneys did not interfere with the plaintiffs privacy interest: "They received the disclosure in a contextthe report of a physician retained by the defense in discovery proceedingsthat did not indicate a confidential communication, and the evidence does not reveal that they had actual notice of facts suggesting an invasion of privacy." (Urbaniak v. Newton, supra, at p. 1141, 277 Cal.Rptr. 354, fn. omitted.) Moreover, even if plaintiff could state a constitutional claim for invasion of privacy against these parties, it would be barred by the litigation privilege of Civil Code section 47, subdivision (b).
In applying the litigation privilege to the physician who released the constitutionally protected communication, we held that the Cutter decision called for a balancing of relevant statutory and constitutional interests: "Civil Code section 47, subdivision 2, does not provide `blanket immunity for disclosures ... of constitutionally protected privileged communications.' (Cutter v. Brownbridge, supra 183 Cal.App.3d at p. 847, 228 Cal.Rptr. 545.) Where the constitutional right of privacy is at stake, the statute calls for `careful balancing' of the relevant statutory and constitutional interests.' (Ibid.) The allegations of the complaint support the inference that Dr. Newton knew of and ratified the use of the information confided to his nurse. The offending information had limited relevance to the medical examination. It would have been possible to mention the patient's concern over his health as a source of stress without specifically mentioning his HIV positive status. Under these circumstances, as in Cutter v. Brownbridge, supra, at p. 848, 228 Cal. Rptr. 545, `[w]e have determined that the constitutional right to privacy outweighs the policies underlying the judicial proceedings immunity when private material is voluntarily published, without resort to a prior judicial determination.'" (Urbaniak v. Newton, supra, 226 Cal.App.3d at p. 1141, 277 Cal.Rptr. 354.)
Respondent relies on language in Silberg v. Anderson, supra, 50 Cal.3d 205, 215, 266 Cal.Rptr. 638, 786 P.2d 365, describing the privilege as being "absolute in nature," that does not allow for a balancing of interests test. But Silberg did not consider the application of the privilege to a constitutional cause of action but rather cited Ribas v. Clark, supra, 38 Cal.3d 355, 212 Cal.Rptr. 143, 696 P.2d 637 as immunizing defendants from "tort liability based on theories of ... invasion of privacy...." (Silberg v. Anderson, supra at p. 215, 266 Cal.Rptr. 638, 786 P.2d 365.)[2] Both the Cutter and Urbaniak decisions have been cited in later Supreme Court decisions without any indication of disapproval. (E.g., Heller v. Norcal Mutual Ins. Co., supra, 8 Cal.4th at p. 42, 32 Cal.Rptr.2d 200, 876 P.2d 999 ["the Urbaniak decision may have been correct in its discussion of the right to privacy in the context of unauthorized disclosure of a patient's HIV status"]; Hill v. National Collegiate Athletic Assn., supra, 7 Cal.4th at pp. 18 and 27, fn. 7, 26 Cal.Rptr.2d 834, 865 P.2d 633; People v. Wharton (1991) 53 Cal.3d 522, 554, 280 Cal.Rptr. 631, 809 P.2d 290; but see Wise v. Thrifty Payless, Inc. (2000) 83 Cal.App.4th 1296, 1303, fn. 1, 100 Cal.Rptr.2d 437.) More importantly, *926 Hill v. National Collegiate Athletic Assn., supra, at p. 34, 26 Cal.Rptr.2d 834, 865 P.2d 633, authoritatively approves the balancing of interest methodology in applying California Constitution, article I, section 1.
We conclude that Cutter v. Brownbridge, supra, 183 Cal.App.3d 836, 228 Cal.Rptr. 545 properly held that a balancing of interest analysis governs application of the litigation privilege to a cause of action for invasion of privacy under California Constitution, article I, section 1. Cutter makes clear that the litigation privilege applies when the disclosure is made pursuant to a judicial determination, but, in the absence of a judicial ruling, the constitutional right to privacy may sometimes outweigh the policies underlying the privilege. The pleadings here allege an intentional disclosure of HIV test results that the defendants knew were improperly released by the hospital. We recognize the importance that these records may have had to the ascertainment of the truth of appellant's claims, but standing alone the allegations of the amended complaint do not disclose the relevance of the test results to the physical injuries put at issue by appellant's personal injury suit. Accepting the allegations as true, as we must on appeal from an order sustaining a demurrer, the amended complaint alleges a willful and unnecessary disclosure of constitutionally protected information, similar to the disclosure in Urbaniak. Based solely upon these allegations we conclude that the constitutional right to privacy outweighs the policies underlying the litigation privilege and that the trial court erred in sustaining the demurrer as to the cause of action for invasion of privacy.[3]

B. Intentional Infliction of Emotional Distress

A balancing of interests analysis, however, is not applicable to the remaining tort causes of action. As noted in Silberg, a line of decisions holds that Civil Code section 47, subdivision (b)(2), immunizes defendants from tort liability based on theories of intentional infliction of emotional distress. (E.g., Silberg v. Anderson, supra, 50 Cal.3d at p. 215, 266 Cal.Rptr. 638, 786 P.2d 365; Rosenthal v. Irell & Manella (1982) 135 Cal.App.3d 121, 128, 185 Cal. Rptr. 92; Pettitt v. Levy (1972) 28 Cal. App.3d 484, 492, 104 Cal.Rptr. 650; Kachig v. Boothe (1971) 22 Cal.App.3d 626, 641, 99 Cal.Rptr. 393.) These precedents clearly also apply to theories of negligent infliction of emotional distress and operate to bar the claims of intentional and negligent infliction of emotional distress in the present case.
Appellant claims that the use of documents disclosing his HIV status formed part of a pattern of aggressive litigation by the respondent law firm that subjected him to needless emotional stress. But the alleged conduct involved communications by the firm in the course of the litigation to achieve the firm's object of defending the interests of its clients. The communications thus come squarely within the bar of the litigation privilege.

C. Health and Safety Code Section 120980

Lastly, we turn to appellant's claim for damages under Health and Safety Code section 120980, subdivision (d), which provides: "Any person who commits any act described in subdivision (a) or (b) shall be liable to the subject for all actual damages, including damages for economic, bodily, or psychological harm that is a proximate result of the act." The "act described in subdivision (a) or (b)" is the negligent or willful disclosure of "the results of an HIV test ... to any third party, in a manner that identifies or provides identifying characteristics of the person to whom the test results apply, except pursuant to a written authorization...." (Id. at subd. (b).)
*927 In Urbaniak v. Newton, supra, 226 Cal. App.3d at pp. 1142-1143, 277 Cal.Rptr. 354, we concluded that a close examination of the statute as a whole reveals that it applies "only to disclosures by persons having access to the record of the results of a blood test," (id. at p. 1143, 277 Cal. Rptr. 354) that is, to the health care providers responsible for receiving and keeping custody of the test results in the course of medical diagnosis or treatment. This legislative intent is apparent in the definition of "written authorization" as applying "only to the disclosure of test results by a person responsible for the care and treatment of the person subject to the test." (Health & Saf.Code, § 120980, subd. (g).) And it is implicit in the reference to "medical record of the patient" in subdivision (l) and to "any record" in the definition of the term "disclosed" in subdivision (k).
A broader interpretation would "give the statute an extraordinarily long reach, affecting the transmittal of information about AIDS victims in a wide variety of social contexts" among persons with no formal responsibility for custody of the medical information. (Urbaniak v. Newton, supra, 226 Cal.App.3d at pp. 1142-1143, 277 Cal.Rptr. 354.) The scheme of sanctions for violation of the statute, in particular the civil penalties and criminal punishment, do not appear to contemplate such a "sweeping scope" of the statute, but rather are suited for regulation of health care providers.
As we noted in Urbaniak, "[o]ur interpretation is favored by the legislative history. For example, the emergency provision of the statute explains that it was intended `to protect the confidentiality of persons undergoing a blood test for' AIDS and therefore `to encourage individuals who are stricken with the disease to undergo treatment....' (Stats.1985, ch. 22, § 4, p. 83.) This legislative purpose will be served only to the extent that the statute is applied to persons and institutions that conduct tests for AIDS, assume responsibility for custody or distribution of test results, or use test results in connection with treatment of affected persons." (Urbaniak v. Newton, supra, 226 Cal.App.3d at p. 1143, 277 Cal.Rptr. 354.)

DISPOSITION
The judgment is reversed as to the invasion of privacy cause of action and otherwise affirmed. The parties shall bear their own costs on appeal.
STRANKMAN, P.J., and MARCHIANO, J., concur.
NOTES
[1] We have chosen sua sponte to refer to appellant as Jeffrey H.
[2] The Ribas decision also considered the application of the litigation privilege to a statutory claim under Penal Code section 637.2 to recover treble damages and a $3,000 civil penalty and held that the privilege applied only to the claim for treble damages. The court reasoned that to "the extent plaintiff alleges in his complaint that he suffered actual injury solely as a result of defendant's testimony at the arbitration hearing, his cause of action under Penal Code section 637.2 must fail." (Ribas v. Clark, supra, 38 Cal.3d at p. 365, 212 Cal.Rptr. 143, 696 P.2d 637. But "[b]ecause the right to [the civil penalty] accrues at the moment of the violation, it is not barred by the judicial privilege." (Ibid.; see also Kimmel v. Goland (1990) 51 Cal.3d 202, 205, 271 Cal.Rptr. 191, 793 P.2d 524 and Susan S. v. Israels (1997) 55 Cal.App.4th 1290, 1299-1301, 67 Cal.Rptr.2d 42.)
[3] We express no opinion on the merits of appellant's case or whether the amended complaint is sufficient to survive other pretrial motions.