133 Cal.Rptr.2d 276 (2003)
108 Cal.App.4th 265
Katherine MANSELL, Plaintiff and Appellant,
v.
Douglas W. OTTO et al., Defendants and Respondents.
No. B155418.
Court of Appeal, Second District, Division Seven.
April 29, 2003.
As Modified on Denial of Rehearing May 29, 2003.
*277 Law Offices of George T. Kelly, George T. Kelly, Seal Beach, and Jeany A. Lee, for Plaintiff and Appellant.
*278 Douglas W. Otto in propria persona.
Greines, Martin, Stein & Richland and Kent L. Richland, Los Angeles, for Defendant and Respondent, Douglas W. Otto.
Waxier Carner Weinreb Brodsky, Barry Z. Brodsky, Jeffery E. Stockley and Scott J. Quan for Defendant and Respondent, Armand Arabian.
Law Offices of Edward P. George, Jr., Edward P. George, Jr. and Timothy L. O'Reilly, Long Beach, for Defendant and Respondent, Edward P. George, Jr.
Quinlivan & Kaniewski, Patrick C. Quinlivan and Martin S. McMahan, South Coast Metro, for Defendant and Respondent, Jeffrey Carlton.
JOHNSON, J.
A crime victim sued the alleged perpetrator and his criminal defense counsel for invasion of her constitutional right of privacy, based on the unauthorized reading of her mental health records by the defendants and other members of the defense team. The trial court sustained the defendants' demurrer to the plaintiffs complaint without leave to amend and dismissed the action. The court found the plaintiffs claim for invasion of her constitutional right of privacy was barred as a matter of law by the litigation privilege. We find the litigation privilege inapplicable to the noncommunicative acts alleged in the complaint. We nevertheless find plaintiff cannot state a claim for liability against defendants because they obtained her medical and psychiatric records through the court's normal processes, including a court order. Accordingly, we affirm the judgment of dismissal.

FACTS AND PROCEEDINGS BELOW
The following facts are taken from the complaint and the transcript of the hearing on the prosecution's motion for a protective order in the underlying criminal case.[1]
Respondent Jeffrey Manning Carlton was charged in two criminal proceedings alleging narcotics violations as well as assault and battery charges against appellant Katherine Mansell.[2] Carlton retained respondents Douglas W. Otto, Edward P. George, Jr. and Armand Arabian, to represent him in the criminal proceedings.[3]
In preparing a defense to the criminal assault and battery charge respondents sought appellant's records from the hospital where she sought treatment. The complaint alleges respondents "caused a subpoena duces tecum to be served on the Veterans Administration Hospital in connection with the defense of defendant Carlton. Said Subpoena sought the medical and psychiatric records of Katherine Mansell aka Katherine Midtbo for the period from 1976 to the present." The subpoena requested "[a]ny and all medical and psychiatric records of doctors or nurses or other medical professionals; records of all hospitalizations, results of any laboratory tests, x-rays, CAT scans, MRI screenings, or other diagnostic procedures; records of any medications prescribed and/or administered; records of diagnosis and treatment of any type performed and/or recommended; and records of all visits made to the emergency room and treatment received there for KATHERINE MIDTBO [aka Mansell] for the period of 1976 to the present."
*279 The complaint states the subpoena directed the custodian of records for the Veterans Administration Hospital to "deliver [the requested records] to Department 6 of the Long Beach Municipal Court...."
The hospital informed respondents records responsive to the subpoena could only be produced by court order.
Thereafter respondents applied ex parte for a court order directing release of the records sought in the subpoena. The ex parte application, and counsel's declaration in requesting the court order, mentioned only medical records. However, counsel's ex parte motion and declaration were apparently submitted with the original application for the subpoena duces tecum requesting both medical and psychiatric records. Judge Richard Lyman signed the order directing release of appellant's records. The order states in part: "GOOD CAUSE APPEARING THEREOF, IT IS HEREBY ORDERED that the Custodian of Records for the Veterans Administration Hospital in Long Beach, California, produce the medical records of Katherine Mansell (DOB 2/12/58) aka Katherine Midtbo as described in the attached subpoena duces tecum served herewith
On receipt of the court order and subpoena the hospital sent appellant's records under seal to the court as directed.
From the allegations in appellant's complaint, it appears the court released the records to the prosecution, and that the prosecution in turn made copies of the records and gave them to the defense. Appellant's complaint alleges: "Plaintiff is informed and believes that on November 4, 1999, Defendant OTTO requested of the Prosecution to make copies of the documents contained in the sealed envelope sent to the court. Said documents included medical and psychiatric records of plaintiff from 1976 and on...."
Respondents read appellant's medical and psychiatric records and disseminated them to other members of the defense team.
A few weeks later the prosecution sought a protective order directing all appellant's records be returned to the court. Judge William T. Garner presided at the hearing. After extensive argument, the court treated the motion as a belated motion to quash, granted the motion, and ordered all records and derivative materials be returned. Specifically, the court ordered "the records be returned to the victim. And I'm going to treat this motion as a motion to quash the subpoena duces tecum, and I'm going to grant the motion to quash. [¶] Now, I realize that it puts defense counsel at [sic] a lot more work. They have to go through this process again. But next time maybe they will want to narrow the request down somewhat."
Over the prosecutor's objection the court also expressly found respondents returned all documents in a timely fashion and further stated it was granting the motion to quash, but not because it believed respondents had "duped" Judge Lyman into issuing the court order for the records.
Appellant filed suit against respondents. Her complaint alleges a claim for invasion of the constitutional right of privacy under the California Constitution, article I, section 1, based on respondents and other members of the defense team reading her confidential mental health records.[4] Respondents demurred to the complaint, arguing they were immune from liability *280 under the litigation privilege of Civil Code section 47, subdivision (b).
The trial court found the litigation privilege applied and sustained respondents' demurrer without leave to amend. Thereafter, the court entered judgment dismissing appellant's complaint. This appeal followed.

DISCUSSION

I. STANDARD OF REVIEW.

In reviewing an order sustaining a demurrer without leave to amend, we independently review the complaint to determine whether the facts alleged state a cause of action under any possible legal theory.[5] In doing so, we give the complaint a reasonable interpretation, "treat[ing] the demurrer as admitting all material facts properly pleaded."[6]

II. THE FACTS RESPONDENTS RECEIVED APPELLANT'S COFIDENTIAL MENTAL HEALTH RECORDS AS A RESULT OF A COURT ORDER, AND ONLY AFTER RELEASE BY THE COURT, COMBINE TO PRECLUDE POTENTIAL LIABILITY FOR READING AND DISSEMINAING THOSE RECORDS.

"[A] plaintiff alleging an invasion of privacy in violation of the state constitutional right to privacy must establish each of the following: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy."[7]
In this case, respondents do not contest appellant's complaint states a claim for violation of her constitutional right of privacy. Evidence Code section 1014 provides a statutory privilege of privacy which provides a patient the "privilege to refuse to disclose, and to prevent another from disclosing a confidential communication" between herself and her psychotherapist. This psychotherapist/patient privilege is also an aspect of the constitutional right to privacy.[8] Respondents claim the litigation privilege nevertheless immunizes them from liability for the alleged violation of her constitutional right of privacy.
The so-called litigation privilege found in Civil Code section 47, subdivision (b)(2) makes privileged a "publication or broadcast" made in any "judicial proceeding." As the Supreme Court explained, the litigation privilege of Civil Code section 47 "is now held applicable to any communication, whether or not it amounts to a publication, and all torts except malicious prosecution."[9] The privilege applies to any publication "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action."[10]
*281 Respondents' act of reading appellant's confidential psychiatric records satisfies these elements in only the most general sense: The act of reading her confidential records was related to a judicial proceeding, taken by the defense team of a litigant to achieve the object of preparing a defense to the charge in the pending criminal prosecution. However, we note nowhere in the complaint does appellant allege any of the information contained in those reports was testified to, or otherwise used in any judicial proceeding. Instead, the allegations of the complaint and judicially noticed facts reveal appellant instead complains several members of the defense team read her confidential psychiatric records. Because these acts describe noncommunicative conduct, it would appear the litigation privilege is not technically applicable. Indeed, in Susan S. v. Israels we expressly held the litigation privilege inapplicable to the unauthorized reading of confidential mental health records.[11]
Our state's highest court has drawn a distinction between injury arising from communicative acts, which are privileged, and injury arising from noncommunicative conduct, which is not. In Ribas v. Clark[12] the attorney for the plaintiffs wife eavesdropped on a telephone conversation between the wife and the plaintiff. The attorney then testified to the conversation in an arbitration proceeding. Plaintiff sued the attorney alleging, among other things, violation of California's Invasion of Privacy Act[13] and common law invasion of privacy. The trial court found the litigation privilege applied and sustained the attorney's demurrer to the complaint without leave to amend. On appeal, the Supreme Court reversed as to the privacy cause of action but affirmed as to the common law tort of invasion of privacy, noting the injury under the common law tort "stems solely from defendant's testimony at the arbitration proceeding." [14] In upholding the cause of action based on the act of eavesdropping, and rejecting the cause of action based on testimony which resulted from the eavesdropping, the court made a distinction between the injury arising from noncommunicative conductthe attorney's eavesdroppingand a communicative actthe attorney's testimony.
The court reinforced the distinction between communicative and noncommunicative acts in Kimmel v. Goland.[15] In Kimmel, the court held the litigation privilege did not shield mobilehome park management representatives from liability for their acts of unlawfully tape recording confidential conversations between the parties. The court emphasized, "the litigation privilege is plainly not applicable" to the acts of tape recording.[16] The court distinguished this unprivileged activity from any publication or broadcast of the information contained in those conversations. The Kimmel court noted, "a review of the myriad cases that have applied section 47(2) to shield defendants from liability demonstrates that, without exception, the privilege has applied only to torts arising from statements or publications." [17]
*282 In the present case appellant argues the litigation privilege was equally inapplicable because her complaint alleged only noncommunicative conduct, i.e., reading her confidential mental health records. Moreover, she points out, this court in Susan S. plainly held unauthorized reading of confidential mental health records are noncommunicative acts for which the litigation privilege presents no bar to suit for personal injuries arising from this conduct.[18]
However, the mere act of reading confidential and privileged materials, or reading and disseminating such materials, cannot alone be sufficient to be an actionable invasion of a plaintiffs right of privacy. In other words, these acts cannot alone be the test for potential liability. There are likely several thousands, if not tens of thousands, of privileged and confidential records being read and disseminated at this very moment as litigants all over the state prepare for trial. Likely only a tiny fraction of these cases will ever result in claims of tortious invasions of privacy. There must be a reason for this. As the cases make clear, valid statutory or constitutional claims for invasion of privacy based on noncommunicative acts require something more to establish liability than simply the acts of reading and/or dissemination standing alone. We note the salient fact in each of the cases finding potential liability, the offending party did not even make an attempt at either prior judicial review or approval prior to reading and disseminating the confidential records. It was these facts of a total lack of judicial oversight and the voluntary disclosure of confidential materials which in combination gave rise to actionable claims for invasion of privacy.
For example, in Cutter v. Brownbridge[19] a patient sued his psychotherapist for invasion of privacy. The patient's complaint alleged the psychotherapist "`voluntarily, and not as a result of [subpoena] or other legal compulsion' executed a written declaration describing his diagnosis of Cutter, as well as damaging personal details learned as a result of his being Cutter's therapist."[20] The patient's wife submitted the psychotherapist's declaration with her request to suspend the patient's visitation with their children. The doctor demurred on the ground the litigation privilege applied to immunize him from civil liability. Ultimately the trial court sustained the doctor's demurrer without leave to amend and dismissed the action.[21]
The appellate court reversed, finding the litigation privilege did not provide blanket immunity for invasions of the constitutional right of privacy.[22] "We conclude that, when disclosure of constitutionally protected material is contemplated, compliance with the Evidence Code requirements for claiming the privilege when that disclosure is sought and resort to the protective procedures provided are necessary prerequisites to protection of section 47, subdivision 2, immunity. Thus, a psychotherapist who volunteers information concerning a *283 patient obtained in connection with their relationship, does so at his or her peril."[23]
In Urbaniak v. Newton,[24] the plaintiff underwent medical procedures in connection with a workers' compensation claim. The plaintiff disclosed his HIV status to a nurse following a neurological test so hospital technicians would know to properly sterilize the equipment. The physician unnecessarily included information in his report regarding the plaintiffs HIV status. The physician then sent a copy of the report to the plaintiffs counsel, his employer's insurance carrier and to the carrier's counsel, who in turn sent a copy to the Workers' Compensation Appeals Board.[25] The plaintiff brought suit, claiming the gratuitous disclosure of his HIV status was an unconstitutional invasion of his right of privacy. The trial court granted the defendants' motion for summary judgment, finding dissemination of the report was privileged under Civil Code section 47 as a publication in a judicial proceeding.[26]
The appellate court agreed the litigation privilege provided a valid defense for the insurance company, its counsel and the employer's counsel but only because they had no actual notice of facts suggesting an invasion of privacy, and because they received the doctor's report in discovery proceedings which did not indicate it was a confidential communication.[27] However, the court reversed the judgment in favor of the doctor. "The allegations of the complaint support the inference that Dr. Newton knew of and ratified the use of the information confided to his nurse. The offending information had limited relevance to the medical examination. It would have been possible to mention the patient's concern over his health as a source of stress without specifically mentioning his HIV positive status. Under these circumstances, as in Cutter v. Brownbridge, supra, at page 848, 228 Cal. Rptr. 545, `[w]e have determined that the constitutional right to privacy outweighs the policies underlying the judicial proceedings immunity when private material is voluntarily published, without resort to a prior judicial determination.'"[28]
In Susan S. v. Israels,[29] defense counsel in a criminal prosecution for sexual battery served a subpoena duces tecum for the crime victim's records on the mental health facility where she sought treatment. The facility sent her mental health records directly to defense counsel. Defense counsel read the records, transmitted them to the defense psychiatrist, and used the information in cross-examining the crime victim at trial. The crime victim brought suit against defense counsel and his client for invasion of her constitutional right of privacy and other claims. The trial court sustained the defendants' demurrer without leave to amend and dismissed the action.[30]
This court affirmed the judgment of dismissal with regard to the other causes of action. However, we found the complaint stated a cause of action for violation of *284 her constitutional right of privacy. We noted the subpoena duces tecum process itself implicitly recognizes an expectation of privacy on the part of the person whose records are subpoenaed. It requires the witness to appear before the judge. In the alternative, the witness must place the records in a sealed envelope, and place the sealed envelope inside another envelope, and mail it to the clerk of the court. We stated confidential records should not be produced to the subpoenaing party "until a judicial determination has been made that the person is legally entitled to receive them."[31]
In Susan S. we concluded, "[a] stranger's unauthorized reading and dissemination of a person's mental health records is a serious invasion of the person's privacy."[32] We also found the litigation privilege inapplicable to defense counsel's noncommunicative act of reading these confidential records. "Susan S.'s cause of action for invasion of her constitutional right of privacy does not depend on the 'publication' or `broadcast' of her mental health records but rests on Israels' conduct in reading those records. In this respect, Israel's conduct is similar to the defendants' conduct of eavesdropping on and secretly recording telephone conversations in Ribas v. Clark ... and Kimmel v. Goland ..."[33]
In Wise v. Thrifty Payless, Inc.,[34] a customer sued a pharmacy for invasion of privacy for its unauthorized disclosure of prescription drug information to her husband. The customer gave the drugstore express directions not to release her prescription information to anyone because the couple was involved in acrimonious dissolution proceedings. Nevertheless, a pharmacy clerk provided her husband with a list of his wife's prescriptions when he claimed he needed them to prepare tax returns.[35] The husband used the information about his wife's prescription drug use in their child custody battle to accuse her of being a drug addict and a danger to the couple's children. Among other things, the husband also wrote to the Department of Motor Vehicles charging his wife with violating the Vehicle Code which prohibits a person addicted to drugs from driving a motor vehicle.[36]
The appellate court concluded if the wife included her husband as a defendant, "the litigation privilege would bar plaintiff from recovery of damages from him proximately caused by his use of the drug printout in the family court and DMV proceedings."[37] In contrast, the court found Payless's act of voluntarily disclosing the wife's private medical information to her *285 husband was "clearly not" covered by the litigation privilege. "Regardless of whether the privilege protected Mr. Wise from liability for his subsequent communications in the litigation forum, Payless cannot avoid the insurmountable fact that its communication outside that forum enjoyed no such protection. We find no persuasive reason to confer section 47(b) immunity to one who wrongfully reveals confidential information simply because the disclosure subsequently becomes a hot potato in the course of court litigation or administrative hearings."[38]
In Jeffrey H. v. Imai, Tacllock & Keeney[39] the plaintiff brought an action against a law firm and a secretary in the firm for invasion of the constitutional right of privacy and other claims. His complaint alleged the law firm had improperly released his hospital records in the underlying lawsuit, and in arbitration proceedings disclosed the results of his HIV tests to the arbitrator.[40] The trial court sustained the defendants' demurrer without leave to amend and dismissed the action.
The appellate court reversed the judgment as to the invasion of privacy cause of action and otherwise affirmed. The court stated, "the litigation privilege applies when the disclosure is made pursuant to a judicial determination, but, in the absence of a judicial ruling, the constitutional right to privacy may sometimes outweigh the policies underlying the privilege."[41] The complaint alleged an intentional disclosure of the plaintiffs HIV test results which the defendants knew were improperly released by the hospital. Based on this allegation, the court concluded the constitutional right of privacy outweighed the policies underlying the litigation privilege.[42]
In the present case, by contrast, respondents sought and received a court order for release of appellant's records. The court order expressly references the affidavit describing the records sought. We indulge the presumption the court performed its official duties before issuing the order,[43] i.e., that the trial court read counsel's declaration and the affidavit and thereafter found good cause for release of the records before signing the order. Moreover, as noted, Judge Garner in ordering appellant's hospital records returned, stated he was granting the motion to quash but not because he believed Judge Lyman had been "duped" into issuing the court order for the blanket release of records not obviously necessary for the criminal trial.
Also, unlike the cases noted above, in the present case appellant's confidential records were not delivered to counsel, but were delivered to the court under seal. It *286 was the court who then released appellant's records to the prosecutor, who in turn, provided copies to respondents.[44] After the Supreme Court's decision in People v. Hammond[45] the trial court in the underlying matter was under no legal compulsion at the pretrial stage of the proceedings to review appellant's records in camera to determine which, if any of the records could be released to counsel under the now overruled authority of People v. Reber.[46]
Despite appellant's suggestion in her appellate briefs, she does not claim her injury arose from respondents' overly broad request for her medical and psychiatric records.[47] Instead, her claimed injury *287 is the result of the court order requiring the hospital to release those records, and from the trial court's release of *288 those records to the parties, apparently without further review.
These facts establishing a judicial imprimatur distinguish the present case from those finding liability for the unauthorized dissemination of a patient's privileged records.[48] These facts similarly preclude a finding of liability based on respondents' reading of those confidential records which they received through the prescribed judicial process.[49]

DISPOSITION
The judgment is affirmed. Each side to bear its own costs on appeal.
I concur: WOODS, J.
PERLUSS, P.J., Dissenting.
I respectfully dissent.
Were it not for our decision in Susan S. v. Israels (1997) 55 Cal.App.4th 1290, 67 Cal.Rptr.2d 42 (Susan S.) I would agree with the trial court's finding that the conduct of respondent Jeffrey Manning Carlton and his criminal defense lawyers in obtaining Katherine Mansell's confidential mental health records is absolutely privileged under Civil Code section 47, subdivision (b),[1] and would therefore concur with the majority's conclusion that the judgment of dismissal is properly affirmed. In light of the holding and rationale of Susan S., however, I would grant Ms. Mansell an opportunity to amend her complaint to allege respondents deliberately misled the criminal trial court to obtain the initial discovery order and to attempt to prove her claim for invasion of her constitutional right to privacy.

1. Case Law Other than Susan S. Recognizes that Ancillary Noncommunicative Conduct Does Not Defeat the Litigation Privilege

As originally filed Ms. Mansell's complaint focused on the respondents' alleged lack of good cause for discovery of her psychiatric records dating back to 1976, the omission from the ex parte application of any specific reference to psychiatric records and the failure of the subpoena to propose an in camera court review of the documents prior to their disclosure, the procedure recognized in People v. Reber (1986) 177 Cal.App.3d 523, 531-532, 223 Cal.Rptr. 139 (Reber) as the appropriate method for a criminal defendant to obtain privileged records by demonstrating his or her need for the information outweighed the crime victim/patient's interest in confidentiality.[2] Even if some aspect of this allegedly tortious course of conduct involved a noncommunicative act (reading the records before disclosing them to others, including potential expert witnesses for use in cross-examining Ms. Mansell at Carlton's criminal trial), but for Susan S. I would conclude respondents' discovery efforts were communicative in their essential nature and therefore within the privilege of section 47, subdivision (b). (See Rubin v. Green (1993) 4 Cal.4th 1187, 1195-1196, 17 Cal.Rptr.2d 828, 847 P.2d 1044 [fact *289 that defendants' communications "necessarily involved related acts" does not destroy privilege]; O'Keefe v. Kompa (2000) 84 Cal.App.4th 130, 134, 100 Cal.Rptr.2d 602["[T]he scope of `publication or broadcast' includes noncommunicative conduct like the filing of a motion for a writ of sale [citation], the filing of assessment liens [citation], or the filing of a mechanic's lien [citation]. The privilege also applies to conduct or publications occurring outside the courtroom...."].)
In Brown v. Kennard (2001) 94 Cal. App.4th 40, 113 Cal.Rptr.2d 891, for example, the plaintiff complained the defendant's allegedly wrongful levy pursuant to a writ of execution constituted an abuse of process. Seeking to avoid the bar of the litigation privilege, the plaintiff asserted the defendant's noncommunicative act in wrongfully levying on his bank account (as opposed to the communicative acts of obtaining a judgment and applying for the writ of execution) deprived him of his property interest in that account, causing injury outside of the judicial proceeding. (Id. at p. 49, 113 Cal.Rptr.2d 891.) The Court of Appeal rejected this purported distinction: "The act of applying for a writ is privileged. The privilege extends to torts arising from the privileged statement or publication. As such, not only does the privilege protect the application for the writ of execution, it also extends to the act of carrying out the directive of the writ. To hold otherwise would effectively strip the litigation privilege of its purpose." (Id. at p. 50, 113 Cal.Rptr.2d 891, fns. omitted.)
Similarly in the case at bar, respondents' act of applying for the order requiring production of Ms. Mansell's psychiatric records is privileged under section 47, subdivision (b). (O'Keefe v. Kompa, supra, 84 Cal.App.4th at p. 135, 100 Cal. Rptr.2d 602 [even an act committed fraudulently is covered by litigation privilege].) The privilege, therefore, should also extend to respondents' acts in carrying out the directive of the discovery order they obtained. (See Wise v. Thrifty Payless, Inc. (2000) 83 Cal.App.4th 1296, 1301-1302, 100 Cal.Rptr.2d 437 [husband's conduct in obtaining confidential information concerning wife's prescription drug purchases without a court order or formal discovery proceedings is protected by litigation privilege].)
In Susan S., supra, 55 Cal.App.4th 1290, 67 Cal.Rptr.2d 42, however, this court held a defense attorney's unauthorized reading of a crime victim's confidential mental health records violated the victim's constitutional right of privacy and that such conduct was not immune from liability under the litigation privilege even though the records were obtained in a judicial proceeding through service of a subpoena duces tecum. (Id. at pp. 1294, 1299, 67 Cal.Rptr.2d 42; see People v. Superior Court (Barrett) (2000) 80 Cal.App.4th 1305, 1318, 96 Cal.Rptr.2d 264 [criminal defendant has right to discovery by subpoena duces tecum of third party records upon showing of good cause].) Susan S., we held, had a reasonable expectation of privacy in her mental health records "subject to a court determination whether any of those records should be disclosed to [respondents] prior to their disclosure." (Susan S., at p. 1298, 67 Cal.Rptr.2d 42.) Applying the Supreme Court's decision in Kimmel v. Goland (1990) 51 Cal.3d 202, 211-212, 271 Cal.Rptr. 191, 793 P.2d 524, which held the litigation privilege did not apply to the taping of a confidential telephone conversationan invasion of privacy caused by noncommunicative conduct occurring outside a judicial proceedingwe held section 47, subdivision (b), did not shield the defendants from liability because "Susan S.'s cause of action for invasion of her constitutional right of privacy *290 does not depend on the `publication' or 'broadcast' of her mental health records but rests on Israels' conduct in reading those records." (Susan S., at p. 1299, 67 Cal.Rptr.2d 42.)[3]
As the majority holds, the "noncommunicative conduct" at issue in the case at bar (reading Ms. Mansell's confidential psychiatric records) is identical to the conduct we found actionable in Susan S. and, unless we retreat from our earlier decision, must also be outside the scope of the litigation privilege found in section 47, subdivision (b), at least for the purpose of a cause of action for invasion of privacy cause of action. Unlike Susan S., however, where there was no judicial review of any sort prior to defense counsel's discovery of the victim's confidential records, here the crime victim's psychiatric records were obtained with a modicum of judicial participation: Although the court in fact ordered production of only the victim's medical records, the subpoena duces tecum enforced by that order identified both medical and psychiatric records.
Notwithstanding this distinction between Susan S. and the present case crucial to the majority's analysisI would grant Ms. Mansell leave to amend her complaint to include additional allegations that defense counsel intentionally misled the criminal court to obtain the order arguably allowing discovery of her psychiatric records.[4] With those amended allegations I believe Ms. Mansell can plead each of the three elements required to state a cause of action for invasion of her constitutional right to privacy.

2. Ms. Mansell Has Demonstrated a Reasonable Possibility She Can Amend Her Complaint to Allege Respondents Deliberately Misled the Criminal Trial Court to Obtain the Initial Discovery Order

In her briefs on appeal and during oral argument, Ms. Mansell has alleged defense counsel in the criminal proceeding affirmatively misled the trial court in order to obtain the discovery order now invoked as immunizing counsel's conduct. In support of her proposed allegations, Ms. Mansell can point to the following matters:
 The ex parte application for an order directing the custodian of records at the Veterans Administration Hospital in Long *291 Beach to produce records in response to defense counsels' subpoena duces tecum referred only to Ms. Mansell's "medical records." (Italics added.)
 The declaration of Douglas W. Otto in support of the ex parte application explained that a prior, unsuccessful subpoena had similarly sought "the medical records of the alleged victim in this case" (italics added), and suggested those records were needed because the nature and extent of "her [Ms. Mansell's] alleged injuries" were material to the defense of the ongoing criminal case against his client, which included a charge of battery with serious bodily injury (Pen.Code, § 243, subd. (d)).
 The application for subpoena duces tecum (which may or may not have been attached to the material submitted to the court) asserts the records requested "are material to the issues involved in this case as they will provide information about the alleged victim's medical history and treatment for alleged injuries." (Italics added.)
 Most significantly, the court order itself, prepared by defense counsel and upon which they rely to create an absolute privilege against liability for invading Ms. Mansell's privacy, directs the custodian of records to "produce the medical records of Katherine Mansell (DOB 2/12/58) aka Katherine Midtbo as described in the attached subpoena duces tecum served herewith." (Italics added.)
To be sure, the application for subpoena duces tecum (but not the subpoena itself) includes in its description of documents to be produced "[a]ny and all medical and psychiatric records." But it remains disputed whether that application was actually attached to the material submitted to Judge Richard Lyman when he signed the order directing production of medical records. Indeed, the minute order for the December 9, 1999 hearing at which Judge William Garner granted the motion to quash the subpoena expressly states the court was making no finding whether the subpoena was attached to Judge Lyman's signed order.[5]
Even if the subpoena and application had been part of the package presented to Judge Lyman, however, it is by no means clear to me, at least under the rationale of Susan S., that Ms. Mansell is precluded as a matter of law from proving defense counsel attempted to mislead the court by requesting an order requiring production of medical records, not medical and psychiatric records, and presenting the court with a form of order doing just that.[6] Certainly Evidence Code section 664, which directs us to "presume[ ] that official duty has been regularly performed" a rebuttable presumption affecting only the burden of proof (Evid.Code, § 660) does not justify a conclusive determination that respondents properly obtained court authorization to read and disseminate Ms. Mansell's psychiatric records.

*292 3. Under Susan S. a Crime Victim Has a Cause of Action for Invasion of Her Constitutional Right to Privacy against a Defense Attorney Who Deliberately Misleads the Court To Obtain Confidential Psychiatric Records

"[A] plaintiff alleging an invasion of privacy in violation of the state constitutional right to privacy must establish each of the following: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." (Hill v. National Collegiate Athletic Assn. (1994) 7 Cal.4th 1, 39-40, 26 Cal.Rptr.2d 834, 865 P.2d 633.)
Our decision in Susan S. recognized an individual's legally protected privacy interest in his or her mental health records (Susan S., supra, 55 Cal.App.4th at p. 1295, 67 Cal.Rptr.2d 42; accord, Jeffrey H. v. Imai, Tadlock & Keeney (2000) 85 Cal. App.4th 345, 353, 101 Cal.Rptr.2d 916 [zones of privacy created by Cal. Const. art. I, § 1, extend to the details of an individual's medical history]), as well as a crime victim's reasonable expectation of privacy in those confidential records. (Susan S., at p. 1295, 67 Cal.Rptr.2d 42 ["Susan S. did not lose her right to privacy in her mental health records because she charged Keables with sexual battery"].) We emphasized there is nothing "`inevitable' " about the disclosure of such records in a criminal case since "discovery requires a careful balancing of the defendant's Sixth Amendment right to cross-examination and the complaining witness's right of privacy. [Citation.]" (Id. at p. 1297, 67 Cal.Rptr.2d 42.)
The viability of Susan S.'s claim for invasion of her right to privacy in the circumstances of that case rested in large part on the defendants' failure to comply with the four-step procedure for pretrial disclosure of confidential psychiatric records established in Reber, supra, 177 Cal.App.3d at pages 531-532, 223 Cal.Rptr. 139. (Susan S., supra, 55 Cal.App.4th at p. 1296, 67 Cal.Rptr.2d 42.) Shortly after our decision in Susan S., the Supreme Court in People v. Hammon (1997) 15 Cal.4th 1117, 1123, 65 Cal.Rptr.2d 1, 938 P.2d 986 (Hammon) expressly disapproved Reber and held a criminal defendant has no right to pretrial disclosure of a crime victim's privileged psychiatric records: "When a defendant proposes to impeach a critical prosecution witness with questions that call for privileged information, the trial court may be called upon ... to balance the defendant's need for cross-examination and the state policies the privilege is intended to serve. [Citation.] Before trial, the court typically will not have sufficient information to conduct this inquiry; hence, if pretrial disclosure is permitted, a serious risk arises that privileged material will be disclosed unnecessarily." (Hammon, at p. 1127, 65 Cal.Rptr.2d 1, 938 P.2d 986.)[7]
Under Hammon (as Judge Garner recognized when he quashed the subpoena on December 9, 1999) criminal defendant Jeffrey Carlton and his defense counsel simply had no right to pretrial disclosure of Ms. Mansell's psychiatric records, even upon a heightened showing of good cause; and Ms. Mansell necessarily had a reasonable expectation that the confidentiality of her records would be respected, at least prior to the commencement of Carlton's trial. If respondents were unaware of this *293 controlling authority and reasonably believed they were entitled to discover the records, Ms. Mansell's cause of action for invasion of privacy will undoubtedly fail. However, to the extent Ms. Mansell can allege and ultimately prove defense counsel deliberately avoided the restrictions on pretrial criminal discovery announced in Hammon by affirmatively misleading Judge Lyman as to the nature of the records sought by their subpoena duces tecum, she will have established, at least in my view, conduct by the defendants constituting a serious invasion of privacy. A properly obtained court order enforcing a subpoena duces tecum for psychiatric records would (notwithstanding Hammon) negate an essential element of the invasion of privacy cause of action"an egregious breach of the social norms underling the privacy right." (Hill v. National Collegiate Athletic Assn., supra 7 Cal.4th at p. 37, 26 Cal.Rptr.2d 834, 865 P.2d 633) An order obtained by successful efforts to mislead the court should not. Ibid. ["Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right. Thus, the extent and gravity of the invasion is an indispensable consideration in assessing an alleged invasion of privacy."].)
The majority's answer to this analysis is, in effect, to assert Ms. Mansell's allegations regarding misrepresentations by defense counsel to the court as to the nature of the records sought by their subpoena duces tecum are irrelevant because those statements would be absolutely protected by the litigation privilege. (Maj. opn., pp. 278-279, fn. 47.) I agree the litigation privilege immunizes defense counsel from tort liability for any misrepresentations to the court, whether or not intentional or in bad faith. (Brown v. Kennard, supra, 94 Cal.App.4th at p. 45, 113 Cal.Rptr.2d 891 ["Because the privilege applies without regard to malice or evil motives, it has been characterized as `absolute.'"]; see Silberg v. Anderson (1990) 50 Cal.3d 205, 214, 266 Cal.Rptr. 638, 786 P.2d 365.)[8] But that immunity does not preclude Ms. Mansell from introducing evidence of respondents' allegedly misleading statements to prove that they, like defense counsel in Susan S., intended to obtain her confidential psychiatric records by improperly evading meaningful judicial oversight of their discovery efforts. (Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc. (1986) 42 Cal.3d 1157, 1168, 232 Cal. Rptr. 567, 728 P.2d 1202 ["`The privileges of Civil Code section 47, unlike evidentiary privileges which function by the exclusion of evidence [citation], operate as limitations upon liability.' [Italics deleted.] Indeed, on brief reflection, it is quite clear that section 47[, subd. ](2) has never been throught to bar the evidentiary use of every `statement or publication' made in the course of a judicial proceeding.... Thus, while section 47[, subd. ](2) bars certain tort causes of action which are predicated on a judicial statement or publication itself, the section does not create an evidentiary privilege for such statements. Accordingly, when allegations of misconduct properly put an individual's intent at issue in a civil action, statements made during the course of a judicial proceeding may be used for evidentiary purposes in determining whether the individual acted with the requisite intent. [Citations.]"]; accord, Shade Foods, Inc. v. Innovative *294 Products Sales & Marketing, Inc. (2000) 78 Cal.App.4th 847, 914-915, 93 Cal. Rptr.2d 364 [statements made during a judicial proceeding may be used to prove bad faith in an action against an insurer].)
The United States Supreme Court has recognized a criminal suspect's right to pursue a damage claim against an overzealous police officer who has submitted a false or objectively unreasonable application for a search warrant, notwithstanding the fact that a judicial officer issued the warrant after finding probable cause. (Malley v. Briggs (1986) 475 U.S. 335, 345, 106 S.Ct. 1092, 89 L.Ed.2d 271.) "[I]n an ideal system an unreasonable request for a warrant would be harmless, because no judge would approve it. But ours is not an ideal system, and it is possible that a magistrate, working under docket pressures, will fail to perform as a magistrate should. We find it reasonable to require the officer applying for the warrant to minimize this danger by exercising reasonable professional judgment." (Id. at pp. 345-346, 106 S.Ct. 1092; see Lombardi v. City of El Cajon (9th Cir.1997) 117 F.3d 1117, 1118 ["specific intent to deceive the issuing court is not an element (in addition to a substantial showing of deliberate or reckless falsehood or omission that is material to the probable cause determination) that the plaintiff must show in order to survive summary judgment on a claim of qualified immunity in a civil rights action seeking damages"].) A crime victim who has suffered an invasion of her constitutional right to privacy at the hands of overzealous defense counsel deserves no less protection. Consistent with the holding and rationale of Susan S., I would give Ms. Mansell the opportunity she seeks to amend her complaint and to attempt to prove her claim.
NOTES
[1] This court takes judicial notice of those matters properly noticed by the trial court. (Evid.Code, §§ 452, 459.)
[2] People v. Jeffrey Manning Carlton (Case Nos. BA189636 and NA014822).
[3] For convenience, this opinion will refer to the attorney defendants and their client collectively as respondents.
[4] The complaint alleges the attorney respondents read and disseminated her psychiatric records with "Carlton's knowledge and consent."
[5] Aubry v. Tri-City Hospital Dist. (1992) 2 Cal.4th 962, 967, 9 Cal.Rptr.2d 92, 831 P.2d 317.
[6] Aubry v. Tri-City Hospital Dist., supra, 2 Cal.4th 962, 967, 9 Cal.Rptr.2d 92, 831 P.2d 317.
[7] Hill v. National Collegiate Athletic Assn. (1994) 7 Cal.4th 1, 39-40, 26 Cal.Rptr.2d 834, 865 P.2d 633.
[8] See, e.g., People v. Stritzinger (1983) 34 Cal.3d 505, 511-512, 194 Cal.Rptr. 431, 668 P.2d 738; see also, In re Lifschutz (1970) 2 Cal.3d 415, 85 Cal.Rptr. 829, 467 P.2d 557.
[9] Silberg v. Anderson (1990) 50 Cal.3d 205, 212, 266 Cal.Rptr. 638, 786 P.2d 365, internal citations omitted.
[10] Silberg v. Anderson, supra, 50 Cal.3d 205, 212, 266 Cal.Rptr. 638, 786 P.2d 365.
[11] Susan S. v. Israels (1997) 55 Cal.App.4th 1290, 1299, 67 Cal.Rptr.2d 42.
[12] Ribas v. Clark (1985) 38 Cal.3d 355, 212 Cal.Rptr. 143, 696 P.2d 637.
[13] Penal Code section 630 et seq.
[14] Ribas v. Clark, supra, 38 Cal.3d 355, 364, 212 Cal.Rptr. 143, 696 P.2d 637.
[15] Kimmel v. Goland (1990) 51 Cal.3d 202, 271 Cal.Rptr. 191, 793 P.2d 524.
[16] Kimmel v. Goland, supra, 51 Cal.3d 202, 209, 271 Cal.Rptr. 191, 793 P.2d 524, italics in original.
[17] Kimmel v. Goland, supra, 51 Cal.3d 202, 211, 271 Cal.Rptr. 191, 793 P.2d 524.
[18] Susan S. v. Israels, supra, 55 Cal.App.4th 1290, 1299, 67 Cal.Rptr.2d 42.
[19] Cutter v. Brownbridge (1986) 183 Cal. App.3d 836, 228 Cal.Rptr. 545.
[20] Cutter v. Brownbridge, supra, 183 Cal. App.3d 836, 840, 228 Cal.Rptr. 545.
[21] Cutter v. Brownbridge, supra, 183 Cal. App.3d 836, 840-841, 228 Cal.Rptr. 545.
[22] Cutter v. Brownbridge, supra, 183 Cal. App.3d 836, 847, 228 Cal.Rptr. 545.
[23] Cutter v. Brownbridge, supra, 183 Cal. App.3d 836, 846*847, 228 Cal.Rptr. 545.
[24] Urbaniak v. Newton (1991) 226 Cal.App.3d 1128, 277 Cal.Rptr. 354.
[25] Urbaniak v. Newton, supra, 226 Cal.App.3d 1128, 1134, 277 Cal.Rptr. 354.
[26] Urbaniak v. Newton, supra, 226 Cal.App.3d 1128, 1133, 277 Cal.Rptr. 354.
[27] Urbaniak v. Newton, supra, 226 Cal.App.3d 1128, 1141, 277 Cal.Rptr. 354.
[28] Urbaniak v. Newton, supra, 226 Cal.App.3d 1128, 1141, 277 Cal.Rptr. 354.
[29] Susan S. v. Israels, supra, 55 Cal.App.4th 1290, 67 Cal.Rptr.2d 42.
[30] Susan S. v. Israels, supra, 55 Cal.App.4th 1290, 1294, 67 Cal.Rptr.2d 42.
[31] Susan S. v. Israels, supra, 55 Cal.App.4th 1290, 1296, 67 Cal.Rptr.2d 42, quoting People v. Blair (1979) 25 Cal.3d 640, 651, 159 Cal. Rptr. 818, 602 P.2d 738.
[32] Susan S. v. Israels, supra, 55 Cal.App.4th 1290, 1298, 67 Cal.Rptr.2d 42.
[33] Susan S. v. Israels, supra, 55 Cal.App.4th 1290, 1299, 67 Cal.Rptr.2d 42.
[34] Wise v. Thrifty Payless, Inc. (2000) 83 Cal. App.4th 1296, 100 Cal.Rptr.2d 437.
[35] Wise v. Thrifty Payless, Inc., supra, 83 Cal. App.4th 1296, 1300, 100 Cal.Rptr.2d 437.
[36] Wise v. Thrifty Payless, Inc., supra, 83 Cal. App.4th 1296, 1300-1301, 100 Cal.Rptr.2d 437.
[37] Wise v. Thrifty Payless, Inc., supra, 83 Cal. App.4th 1296, 1301-1302, 100 Cal.Rptr.2d 437.
[38] Wise v. Thrifty Payless, Inc., supra, 83 Cal. App.4th 1296, 1307, 100 Cal.Rptr.2d 437, italics in original.
[39] Jeffrey H. v. Imai, Tadlock & Keeney (2000) 85 Cal.App.4th 345, 101 Cal.Rptr.2d 916.
[40] Jeffrey H. v. Imai, Tadlock & Keeney, supra, 85 Cal.App.4th 345, 350-351, 101 Cal.Rptr.2d 916.
[41] Jeffrey H. v. Imai, Tadlock & Keeney, supra, 85 Cal.App.4th 345, 360, 101 Cal.Rptr.2d 916.
[42] Jeffrey H. v. Imai, Tadlock & Keeney, supra, 85 Cal.App.4th 345, 360-361, 101 Cal.Rptr.2d 916.
[43] See Evidence Code section 664 ["It is presumed that official duty has been regularly performed."].
[44] The trial court in the present case impliedly found respondents received the mental health records inadvertently. However, this is not strictly accurate from respondents' perspective. As is perhaps normal during discovery, respondents' request was extremely broad. They sought as much information regarding appellant's medical and mental history as they thought might exist. From their perspective, the records they received were exactly what they asked for. There was nothing to indicate respondents thought release of any of the records was inadvertent.

For this reason, the decision in State Compensation Ins. Fund v. WPS, Inc. (1999) 70 Cal.App.4th 644, 82 Cal.Rptr.2d 799 is inapplicable. In State Compensation the court held an attorney could comply with ethical standards, and not be disqualified, if upon receipt of confidential and privileged documents apparently sent inadvertently, the lawyer receiving such materials refrains from examining them beyond ascertaining their privileged nature, and immediately notifies the sender he or she possesses materials which appear to be privileged.
Because respondents received the very documents they requested, it was not reasonably apparent to them appellant's records were provided through inadvertence. In any event, they did not refrain from examining the records, and certainly did not immediately notify the sender they were in receipt of apparently privileged records received inadvertently.
[45] People v. Hammon (1997) 15 Cal.4th 1117, 65 Cal.Rptr.2d 1, 938 P.2d 986.
[46] People v. Reber (1986) 177 Cal.App.3d 523, 223 Cal.Rptr. 139, expressly disapproved in People v. Hammon, supra, 15 Cal.4th 1117, 1123, 65 Cal.Rptr.2d 1, 938 P.2d 986.
[47] The dissenting Justice is of the view appellant could validly state a claim for invasion of privacy if given the chance to amend her complaint to allege respondents deliberately misled the trial court regarding the nature and extent of the records sought which induced the court to sign the court order for their release.

This would be an allegation of intentional misrepresentation, describing communicative conduct, and in a judicial setting. Such an allegation would present the classic scenario for application of the litigation privilege, presenting a bar to any such amended complaint. That this is so is made plain by the Supreme Court's decision in Silberg v. Anderson which concluded the litigation privilege presents an absolute bar to even deliberately or recklessly false communications. In Silberg, the court emphasized the litigation privilege "promotes the effectiveness of judicial proceedings by encouraging attorneys to zealously protect their clients' interests. `[I]t is desirable to create an absolute privilege ... not because we desire to protect the shady practitioner, but because we do not want the honest one to have to be concerned with [subsequent derivative] actions....' [Citation.]" (Silberg v. Anderson, supra, 50 Cal.3d 205, 214, 266 Cal. Rptr. 638, 786 P.2d 365.) Based on this rationale, the high court rejected several Court of Appeal decisions which had imposed a requirement the communication promote the interest of justice as a prerequisite to a valid claim of litigation privilege. In so doing the court observed such a rule is "wholly inconsistent with the numerous cases in which fraudulent communications or perjured testimony have nevertheless been held privileged." (Id. at p. 218, 266 Cal.Rptr. 638, 786 P.2d 365.)
Numerous decisions before and after the court's Silberg decision recognize the litigation privilege presents a bar to actions, even when based on fraudulent representations, forgery, negligent or intentional omissions, and other types of tortious communications. (See, e.g., Taylor v. Bidwell (1884) 65 Cal. 489, 4 P. 491 [complaint alleged charges of arson were falsely fabricated as was testimony at trial]; Wise v. Thrifty Payless, Inc., supra, 83 Cal.App.4th 1296, 100 Cal.Rptr.2d 437 [husband affirmatively misled pharmacy clerk to get copies of wife's prescription drugs for his own improper ulterior motives]; Sacramento Brewing Co. v. Desmond, Miller & Desmond (1999) 75 Cal.App.4th 1082, 89 Cal. Rptr.2d 760 [claim failed although bankruptcy pleadings negligently named wrong party]; Steiner v. Eikerling (1986) 181 Cal.App.3d 639, 226 Cal.Rptr. 694 [the act of forging the will and publication of the forged will in probate were privileged]; Portman v. George McDonald Law Corp. (1979) 99 Cal.App.3d 988, 160 Cal.Rptr. 505 [counsel's negligent representation insurer was financially sound when it was in fact insolvent was a publication protected by the litigation privilege]; Pettitt v. Levy (1972) 28 Cal.App.3d 484, 489, 104 Cal.Rptr. 650 [litigation privilege protected defendants who prepared and presented false and forged documents to city council and planning commission. "Preparing and presenting false documents is equivalent to the preparation and presentation of false testimony. Since there is no exception to the privilege when the testimony is perjured, by a parity of reasoning no exception should apply to the preparation and presentation of false documentary evidence."]; Kachig v. Boothe (1971) 22 Cal.App.3d 626, 99 Cal.Rptr. 393 [litigation privilege protected perjury, as well as manufactured evidence].)
Moreover, the presence or absence of malice or good or bad faith is irrelevant to the inquiry whether the litigation privilege is applicable. (Silberg v. Anderson, supra, 50 Cal.3d 205, 216, 266 Cal.Rptr. 638, 786 P.2d 365 ["it must be concluded that the `without malice' requirement applies only to those allegations against correspondents published in the pleadings and affidavits filed in dissolution proceedings, and that otherwise the Legislature intended section 47(2) to apply to all publications, irrespective of their maliciousness." Italics in original]; Albertson v. Raboff (1956) 46 Cal.2d 375, 295 P.2d 405 [allegations defendant maliciously asserted false claims to real property, knowing he had no right to a lien were no bar to application of the litigation privilege]; Pettitt v. Levy, supra, 28 Cal.App.3d 484, 488, 104 Cal.Rptr. 650 ["The privilege is an absolute one because it protects publications made with actual malice or with the intent to do harm."].) Thus, in this case the result would be the same whether respondents deliberately, intentionally or negligently misrepresented facts to the judge to induce him to sign the court order for appellant's mental health records. Given this state of the law, it would be futile to allow an amendment to assert a claim for invasion of privacy based on allegations of respondents' affirmative misrepresentations.
The decisions the dissenting Justice relies on for an opposite conclusion do not support a contrary finding. Both Malley v. Briggs (1986) 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 and Lombardi v. City of El Cajon (9th Cir.1997) 117 F.3d 1117 concern actions for violations of federal civil rights, and for alleged violations by police officers of their constitutional obligations. They do not purport to construe California's constitutional right to privacy, nor California's statutory litigation privilege. Moreover, the police officer defendants in these decisions were acting under state color of authority, and thus are at maximum entitled to only a qualified immunity (Malley v. Briggs, supra, 475 U.S. 335, 340-341, 106 S.Ct. 1092, 89 L.Ed.2d 271), in contrast to the absolute immunity the litigation privilege affords. Accordingly, these decisions are distinguishable. In addition, the fact, as the dissent notes, respondents' statements may have evidentiary value in some other or future proceeding does not alter the conclusion the litigation privilege would provide respondents immunity from liability in the present action alleging a single cause of action for invasion of privacy. (Oren Royal Oaks Venture v. Greenberg, Bemhard, Weiss & Karma, Inc. (1986) 42 Cal.3d 1157, 1168, 232 Cal.Rptr. 567, 728 P.2d 1202 [discussing potential evidentiary value of otherwise privileged statements in a related abuse of process or malicious prosecution action]; Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc. (2000) 78 Cal.App.4th 847, 914-915, 93 Cal.Rptr.2d 364 [in the context of a bad faith action against insurers].)
[48] Compare, Coverdell v. Department of Social and Health Services (9th Cir.1987) 834 F.2d 758, 764-765 [social worker was entitled to absolute quasi judicial immunity from liability for actions taken in faithfully executing a valid court order].
[49] In light of our conclusion, we need not, and do not, reach respondents' alternative arguments for affirming the judgment.
[1] Statutory references are to the Civil Code unless otherwise indicated.
[2] Reber was expressly disapproved by the Supreme Court in People v. Hammon (1997) 15 Cal.4th 1117, 1123, 65 Cal.Rptr.2d 1, 938 P.2d 986.
[3] Although the injury in Brown v. Kennard, supra, 94 Cal.App.4th 40, 113 Cal.Rptr.2d 891, purportedly occurred like the injury in Kimmel as a result of noncommunicative conduct outside a judicial proceedingthe defendant's wrongful levy on the plaintiff's bank accountthe court persuasively distinguished Kimmel because the defendant had "employed a judicial process (writ of execution) to enforce a purported judgment pursuant to the purpose for which the process was designed, and did so within the confines of a judicial procedure." (Id. at p. 49, 113 Cal.Rptr.2d 891.) That same distinction would seem to apply to the facts in Susan S., where, as we recognized in rejecting an abuse of process claim, the defense counsel employed a subpoena duces tecum for the purpose for which it was designed within the confines of a judicial proceeding. (Susan S., supra, 55 Cal. App.4th at pp. 1302-1303, 67 Cal.Rptr.2d 42.)
[4] "`Where the complaint is defective, "[i]n the furtherance of justice great liberality should be exercised in permitting a plaintiff to amend his complaint, and it ordinarily constitutes an abuse of discretion to sustain a demurrer without leave to amend if there is a reasonable possibility that the defect can be cured by amendment. [Citations.]"` [Citations.]" (Aubry v. Tri-City Hospital Dist. (1992) 2 Cal.4th 962, 970-971, 9 Cal.Rptr.2d 92, 831 P.2d 317; see Code Civ. Proc., § 472c, subd. (a) ["When any court makes an order sustaining a demurrer without leave to amend the question as to whether or not such court abused its discretion in making such an order is open on appeal even though no request to amend such pleading was made"].)
[5] We, of course, do not resolve such factual conflicts when reviewing the propriety of a trial court order sustaining a demurrer without leave to amend. (Aubry v. Tri-City Hospital Dist., supra, 2 Cal.4th at pp. 970-971, 9 Cal.Rptr.2d 92, 831 P.2d 317.) In reviewing Ms. Mansell's proposed amendments to her complaint for invasion of privacy, we deem to be true all material facts alleged (see Serrano v. Priest (1971) 5 Cal.3d 584, 591, 96 Cal. Rptr. 601, 487 P.2d 1241) and also accept as true facts that may be implied or inferred from those expressly alleged. (Lazar v. Hertz Corp. (1999) 69 Cal.App.4th 1494, 1501, 82 Cal.Rptr.2d 368.)
[6] I emphasize I am evaluating the legal import of Ms. Mansell's allegations of misconduct and do not intend to suggest the record now before us would support a finding that those allegations are true.
[7] The Hammon Court limited its analysis to the defendant's lack of any right to pretrial discovery and did not address the issue of balancing the defendant's need at trial for information regarding the victim's psychiatric history against the crime victim's right to privacy. (Hammon, supra, 15 Cal.4th at p. 1128, 65 Cal.Rptr.2d 1, 938 P.2d 986.)
[8] As discussed above, if I were writing on a clean slate, I would also conclude the litigation privilege immunizes respondents' acts in carrying out the directive of the discovery order they obtained, including ancillary non-communicative acts such as reading the confidential records before disseminating ("publishing") them to others, including potential expert witnesses.