[No. A108697. First Dist., Div. Two. July 25, 2006.]

CALIFORNIA CONSUMER HEALTH CARE COUNCIL, Plaintiff and Appellant, v.
KAISER FOUNDATION HEALTH PLAN, INC., Defendant and Respondent.

22

24

COUNSEL

Martin Lawrence Blake; Law Office of Gerald Clausen and Gerald Clausen for Plaintiff and Appellant.

Marion's Inn and Kennedy P. Richardson for Defendant and Respondent.

OPINION

**HAERLE, Acting P. J.—**

## I. INTRODUCTION

Appellant, a "California non-profit public benefit corporation . . . concerned with protecting the interests of health care consumers throughout California," sued on behalf of the general public to enjoin the practice of respondent Kaiser Foundation Health Plan, Inc. (Kaiser) of transmitting to its attorneys allegedly "irrelevant" medical information concerning Kaiser patients who were either making or contemplating making medical malpractice claims against Kaiser. Appellant alleged that Kaiser's practices violate California's unfair competition law, Business and Professions Code section 17200 et seq. (the UCL).

The superior court sustained a demurrer without leave to amend after finding that the challenged practices were not unlawful and were, in fact, authorized by the Confidentiality of Medical Information Act, Civil Code section 56 et seq. (the Confidentiality Act). We agree with that court's analysis and, additionally, find that appellant's claims are barred by amendments to the UCL enacted in November 2004 by Proposition 64. We thus affirm the judgment of dismissal.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Appellant initiated this action on March 15, 2004, and, on July 9, 2004, filed a first amended complaint (FAC) purporting to allege two causes of action under the UCL, the first for engaging in an unlawful, unfair and fraudulent business practice and the second for untrue and misleading advertising.

To support these claims, appellant alleged that, at least since January 2003, Kaiser has engaged in the following practices: (1) "disclosing medical information regarding patients without first obtaining such patient's authorization or otherwise being authorized to do so under the law"; (2) "sharing, selling or

otherwise using medical information regarding such patients for a purpose not necessary to provide health care services to the patients"; and (3) "concealing" these practices from patients. Appellant further alleged that "whenever" a patient makes a claim against Kaiser, Kaiser uses and discloses "all of the patient's medical information . . . including medical information which is irrelevant to the patient's claim."

According to the FAC, Kaiser's alleged practices are unlawful under the UCL because they violate the Confidentiality Act as well as the affected patients' state constitutional right to privacy. Appellant further alleged the challenged conduct (1) is unfair because the harm to patients outweighs the "utility" of Kaiser's acts and practices, (2) is fraudulent because Kaiser has made representations that it uses and discloses patient medical information only in accordance with the law, and (3) renders untrue and misleading Kaiser's advertising regarding its alleged protection of confidential patient information.

Kaiser demurred to appellant's FAC. A hearing on the demurrer was held before the Honorable Steven Brick on October 1, 2004. On October 21, 2004, the court filed an order sustaining Kaiser's demurrer without leave to amend. The trial court found that the conduct alleged in the FAC was not unlawful under the UCL because it did not violate the Confidentiality Act or the California Constitution. The court further found that, in the absence of any alleged unlawful conduct, the FAC failed to state a UCL cause of action based on unfair or fraudulent conduct or a cause of action for false advertising.

A judgment of dismissal was entered on November 5, 2004. Appellant filed its notice of appeal on December 10, 2004.

## III. DISCUSSION

### A. *Standard of Review and Issues Presented*

"We review a trial court's ruling on a demurrer independently. [Citation.]" (*Liska v. The Arns Law Firm* (2004) 117 Cal.App.4th 275, 281 [12 Cal.Rptr.3d 21].) "Our task in reviewing a judgment of dismissal following the sustaining of . . . a demurrer [without leave to amend] is to determine whether the complaint states, or can be amended to state, a cause of action. For that purpose we accept as true the properly pleaded material factual allegations of the complaint, together with facts that may properly be judicially noticed. [Citations.]" (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 672 [34 Cal.Rptr.2d 386, 881 P.2d 1083].)

▆ Appellant contends that it has successfully alleged facts to support a cause of action for violating the UCL. The UCL does not proscribe specific practices but, instead, defines "unfair competition" to "include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." (Bus. & Prof. Code, § 17200.)

Although appellant characterizes Kaiser's practices regarding its disclosure of patient information as unfair, fraudulent and at odds with its advertising, appellant's case rests on the proposition that Kaiser's conduct is "unlawful" within the meaning of the UCL. Indeed, in this court appellant concedes that all of its theories regarding Kaiser's disclosure policy are tethered to and dependent upon proving that the challenged business practice is unlawful. The "unlawful" prong of the UCL " ' "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable. [Citations.]" (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 [83 Cal.Rptr.2d 548, 973 P.2d 527].) Here, appellant contends that the business practices it described in its FAC violate both the Confidentiality Act and our state Constitution. As noted in our factual summary, the trial court rejected these contentions. For reasons we will explain, we agree with the trial court.

On appeal, Kaiser also contends that appellant's claims are barred by Proposition 64, which was approved by California voters on November 2, 2004, and became effective the following day. (See Cal. Const., art. II, § 10, subd. (a).) Proposition 64 amended certain provisions of the UCL and the false advertising law and thereby limited the right of private litigants to prosecute UCL actions. We agree with Kaiser that Proposition 64 bars the present action and establishes a second, alternative basis for affirming the judgment.

B. *The Alleged Conduct Is Not Unlawful*

Appellant complains that confidential patient information is disclosed by Kaiser but the FAC does not identify to whom the allegedly improper disclosure is made. To clarify the factual issue presented to us, we construe the FAC as challenging Kaiser's practice of disclosing *to its attorneys* all information it has pertaining to a patient who has filed or expressed an intent to file a claim against Kaiser. This construction is consistent with the FAC allegations summarized above and has also been adopted by the trial court and the parties themselves.

Appellant's first contention is that Kaiser's disclosure practice violates section 56.10, subdivision (a), a provision of the Confidentiality Act (Civ. Code, § 56.10, subd. (a) (section 56.10(a)), which states: "No provider of

health care, health care service plan, or contractor shall disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization, except as provided in subdivision (b) or (c)."

One of the express exceptions to section 56.10(a) which is set forth in Civil Code section 56.10, subdivision (c) authorizes the disclosure of "medical information regarding a patient" to persons "insuring, responsible for, or defending professional liability that a provider may incur" when those persons are "engaged in reviewing the competence or qualifications of health care professionals or in reviewing health care services with respect to medical necessity, level of care, quality of care, or justification of charges." (Civ. Code, § 56.10, subd. (c)(4) (section 56.10(c)(4).)[1] Therefore, as the trial court found, the practices alleged in the FAC are authorized by section 56.10(c)(4) and do not violate the Confidentiality Act.

Appellant contends that Kaiser's disclosure practice is not authorized by section 56.10(c)(4) because Kaiser discloses to its attorneys *all* medical information about a patient who has filed a claim against Kaiser, including information that is not relevant to the patient's claim. According to appellant, implicit in section 56.10(c)(4) is that its terms are intended to exclude "irrelevant" medical information.

We find nothing in the language of this particular provision to support appellant's interpretation of it. Furthermore, several circumstances indicate to us that the Legislature specifically elected not to graft a relevancy limitation onto the section 56.10(c)(4) exception.

For example, in contrast to section 56.10(c)(4), some of the statutory exceptions to section 56.10(a) *do* expressly impose specific limitations on the disclosure of medical information. As this court observed in *Pettus v. Cole* (1996) 49 Cal.App.4th 402 [57 Cal.Rptr.2d 46] (*Pettus*), "[i]t is important to note that even the permissive disclosure exceptions do not always allow full disclosure of all medical information. The exceptions recognize that in some

---

[1] Section 56.10(c)(4) states: "The information may be disclosed to organized committees and agents of professional societies or of medical staffs of licensed hospitals, licensed health care service plans, professional standards review organizations, independent medical review organizations and their selected reviewers, utilization and quality control peer review organizations as established by Congress in Public Law 97-248 in 1982, contractors, or persons or organizations insuring, responsible for, or defending professional liability that a provider may incur, if the committees, agents, health care service plans, organizations, reviewers, contractors, or persons are engaged in reviewing the competence or qualifications of health care professionals or in reviewing health care services with respect to medical necessity, level of care, quality of care, or justification of charges."

circumstances a legitimate need for access to medical information may conflict with an individual's interest in keeping that information confidential, and attempt to strike a balance. Thus, under some of the exceptions described in [Civil Code] section 56.10, subdivision (c)(1) through (14) the Legislature established parameters within which disclosure is permissible and allowed disclosure of only that information which is necessary to achieve the legitimate purpose addressed by the particular exception." (*Id.* at p. 427.)

A good example of an exception that expressly limits the disclosure of medical information is section 56.10, subdivision (c)(8), of the Confidentiality Act, which states that a health care provider or service plan that has created medical information about a patient at the request and expense of the patient's employer or as the result of an employment-related health care service may disclose to the patient's employer only "that part of the information that [¶] (A) Is relevant in a lawsuit, arbitration, grievance, or other claim or challenge to which the employer and the employee are parties and in which the patient has placed in issue his or her medial history, mental or physical condition, or treatment, provided that information may only be used or disclosed in connection with that proceeding [or] [¶] (B) Describes functional limitations of the patient that may entitle the patient to leave from work for medical reasons or limit the patient's fitness to perform his or her present employment, provided that no statement of medical cause is included in the information disclosed." (Civ. Code, § 56.10, subd. (c)(8) (section 56.10(c)(8).)

The fact that some statutory exceptions to section 56.10(a), like section 56.10(c)(8), expressly establish parameters within which disclosure is permissible strongly suggests that the absence of such parameters from the language of section 56.10(c)(4) was intentional.

Another circumstance supportive of this conclusion relates to the timing of the enactment of section 56.10(c)(4). Although originally enacted in 1979, the Confidentiality Act was repealed and reenacted (in substantially the same form) in 1981. (See *Heller v. Norcal Mutual Ins. Co.* (1994) 8 Cal.4th 30, 38 [32 Cal.Rptr.2d 200, 876 P.2d 999] (*Heller*).) Almost a year before the Confidentiality Act was reenacted, the Legislature enacted section 1985.3 of the Code of Civil Procedure, the statutory process by which a consumer may challenge a third party's subpoena of his or her "personal records," the definition of which specifically includes records held by a "physician, dentist, ophthalmologist, optometrist, chiropractor, physical therapist, . . . pharmacist, pharmacy, hospital, medical center, clinic, radiology or MRI center . . . ." (Code Civ. Proc., § 1985.3, subd. (a)(1).) The purpose of this statute is "to protect a consumer's right to privacy [citation] in his personal records maintained, or kept, by his attorney, accountant, *doctor,* banker, etc."

(*Sasson v. Katash* (1983) 146 Cal.App.3d 119, 124 [194 Cal.Rptr. 46], italics added; see also *Lantz v. Superior Court* (1994) 28 Cal.App.4th 1839, 1848–1849 [34 Cal.Rptr.2d 358].)

In our view, the fact that the Legislature elected to reenact section 56.10(c)(4) without adding any language indicative of a legislative effort to erect additional protections for consumer privacy, i.e., protections over and above those provided by Code of Civil Procedure section 1985.3, again suggests rather strongly that the absence of an express relevancy limitation in section 56.10(c)(4) was intentional.

■ Our conclusion that a relevancy limitation was intentionally omitted from section 56.10(c)(4) is reinforced by the rather obvious problems with implementing such a requirement. Such a restriction would, in essence, raise an intolerable barrier between a health care organization like Kaiser and its attorneys. It has long been recognized, at both the federal and state level, that an attorney preparing for litigation *must* have access to a wide panoply of material and facts. "Proper preparation of a client's case demands that he assemble information, *sift what he considers to be the relevant from the irrelevant facts*, prepare his legal theories and plan his strategy without undue and needless interference." (*Hickman v. Taylor* (1947) 329 U.S. 495, 511 [91 L.Ed. 451, 67 S.Ct. 385], italics added; see also, citing and quoting this language, *PSC Geothermal Services Co. v. Superior Court* (1994) 25 Cal.App.4th 1697, 1709 [31 Cal.Rptr.2d 213]; *2,022 Ranch v. Superior Court* (2003) 113 Cal.App.4th 1377, 1389 [7 Cal.Rptr.3d 197].) In order for an attorney to prepare a meaningful defense to a malpractice claim, he must have unfettered access to his own client's knowledge regarding its relationship to the patient pursuing that claim. ■ Put another way, the legislative determination to omit a relevancy limitation from section 56.10(c)(4) is an acknowledgement that all patient information in Kaiser's possession is sufficiently potentially relevant to a malpractice claim to merit disclosure to Kaiser's own attorneys.

Appellant argues that, totally apart from the terms of section 56.10(c)(4), the disclosure of "irrelevant" medical information violates the California Constitution's provisions protecting the right of privacy.[2] Therefore, it contends, if section 56.10(c)(4) is interpreted to permit such disclosure, it is unconstitutional in so doing. As the superior court recognized, our Supreme Court's holding in *Heller, supra,* 8 Cal.4th 30, undermines any constitutional challenge based on the right of privacy.

In *Heller*, the plaintiff developed serious medical problems after Doctors Geis and Yamaguchi removed a bone spur from her left hand. She brought a

[2] See generally *American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307, 325–328 [66 Cal.Rptr.2d 210, 940 P.2d 797] for an overview of the nature and scope of this right.

malpractice claim against Geis and, during the litigation phase of that lawsuit, Yamaguchi disclosed her private patient information to the insurer who represented both doctors. After the malpractice claim against Geis was resolved, the plaintiff brought a second malpractice action against Yamaguchi and also alleged violations of section 56.10(a) and the constitutional right to privacy based on the disclosures that Yamaguchi had made during the first malpractice case. The *Heller* court held that both the Confidentiality Act and constitutional claims were properly dismissed pursuant to a demurrer. The court found that Yamaguchi's disclosures were expressly authorized by section 56.10(c)(4) and, consistent with our analysis above, also found that, "[s]hould the Legislature deem it necessary to further limit access to a plaintiff's medical condition, it is free to do so by amendment." (*Heller, supra*, 8 Cal.4th at p. 42.)[3]

█ The *Heller* court also found that the plaintiff's constitutional privacy claim failed as a matter of law because she failed to allege facts to support a conclusion that "any expectation of privacy as to her medical condition would be reasonable under the circumstances of [the] case."[4] (*Heller, supra*, 8 Cal.4th at p. 43.) The court reasoned that by placing one's "physical condition in issue" via medical malpractice litigation, a person has his or her "expectation of privacy regarding that condition . . . substantially lowered by the very nature of the action." (*Id.* at p. 43.) This principle clearly applies to Kaiser patients who have either filed or signaled a possible intent to file medical malpractice claims; as a consequence, appellant's constitutional argument fails.

Appellant contends that *Heller* does not undermine its constitutional argument because "*Heller* involved disclosure only of relevant information— i.e., information concerning the medical condition *in issue in that case*." In this sense, appellant maintains, *Heller* simply reaffirms the general rule that, "even when a patient places his or her medical condition in issue he or she continues to have a reasonable expectation of privacy as to medical information which is not directly relevant to that particular condition." (Citing *Jeffrey H. v. Imai, Tadlock & Keeney* (2000) 85 Cal.App.4th 345, 354 [101 Cal.Rptr.2d 916] (*Jeffrey H.*); *Pettus, supra*, 49 Cal.App.4th at p. 442.)

---

[3] Although the Confidentiality Act has been amended since *Heller* was decided, the Legislature has not made any changes to section 56.10(c)(4) which even hint of an intent to impose a relevancy limitation on the disclosure authorized by this exception.

[4] " '[A] plaintiff alleging an invasion of privacy in violation of the state constitutional right to privacy must establish each of the following: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy.' [Citation.]" (*Heller, supra*, 8 Cal.4th at pp. 42–43.) " '[I]n cases where material facts are undisputed, adjudication as a matter of law may be appropriate.' [Citation.]" (*Id.* at p. 43.)

As a factual matter, appellant's reading of *Heller* is not supported by the language in that opinion. Yamaguchi disclosed the *Heller* plaintiff's "condition and prognosis" *as well as* her "medical records." (*Heller, supra,* 8 Cal.4th at p. 36.) Furthermore, the *Heller* court never stated or intimated that the constitutionality of a section 56.10(c)(4) disclosure hinged in any way on satisfaction of an unwritten relevancy test.

Nor are we persuaded that appellant's case authority is factually relevant as it addresses the very different issue of disclosure of medical information to third parties. In the factual scenario at issue here (a) plaintiff puts at issue not only a medical condition but a relationship between the patient and a health care provider, and (b) the target of plaintiff's claim has percipient knowledge pertinent to both of these relevant issues.[5]

In any event, the authorities appellant relies upon confirm that the determination whether a reasonable expectation of privacy exists depends on the "actual circumstances" of the disclosure and that " '[e]ven when a legally cognizable privacy interest is present, other factors may affect a person's reasonable expectation of privacy.' " (*Jeffrey H., supra,* 85 Cal.App.4th at p. 354; see also *Pettus, supra,* 49 Cal.App.4th at p. 441.) The circumstances alleged in this case, even more so than the circumstances in *Heller,* undermine the reasonableness of the privacy expectation that appellant has alleged in the FAC. Once a patient signals his intention to bring a malpractice claim against a health care provider, he or she simply cannot reasonably expect to keep the details of his or her professional relationship with that health care provider a secret from the attorney employed as an agent of the health care provider to defend that liability claim.

At oral argument, appellant maintained that the physician-patient privilege established by Evidence Code section 994 precludes a health care provider from disclosing to its attorney all medical information that it has about a patient who has filed or threatened to file a malpractice claim. This argument is not timely as it was made for the first time in appellant's reply brief. In any event, we reject it.

■ The physician-patient privilege does not extend to "a communication relevant to an issue of breach, by the physician or by the patient, of a duty

[5] Appellant relies upon a trio of California Supreme Court cases to support its contention that a patient's reasonable expectation of privacy precludes his or her physician from disclosing the patient's file to the physician's attorney even after the patient has filed a malpractice claim. (See *In re Lifschutz* (1970) 2 Cal.3d 415 [85 Cal.Rptr. 829, 467 P.2d 557]; *Britt v. Superior Court* (1978) 20 Cal.3d 844 [143 Cal.Rptr. 695, 574 P.2d 766]; *Vinson v. Superior Court* (1987) 43 Cal.3d 833 [239 Cal.Rptr. 292, 740 P.2d 404].) None of these cases involved medical malpractice claims, nor did they assess or even comment upon the reasonable privacy expectations of a patient asserting a malpractice claim against his or her physician.

arising out of the physician-patient relationship." (Evid. Code, § 1001.) Focusing exclusively on the use of the word "relevant" in this statute, appellant extrapolates that a patient claiming medical malpractice retains a privilege and a reasonable expectation of privacy as to medical information in the physician's possession that is not relevant to the malpractice claim. However, this argument begs the question. As we have explained above, when a patient asserts a medical malpractice claim against his physician, his history and relationship with that physician is sufficiently potentially relevant to (1) justify disclosure of the patient's medical file to the physician's lawyer and (2) undermine any claimed expectation of privacy by the patient with respect to that file. These precise circumstances explain the most likely reason that section 56.10(c)(4) does not contain a relevancy limitation. The Legislature did not overlook a patient's constitutional privacy right (as appellant suggests) but, rather, it implicitly found that *no* reasonable expectation of privacy can be asserted to preclude disclosure of a patient's medical records by a health care provider who is accused of malpractice to the attorney retained to defend that malpractice claim.

## C. *Proposition 64 Bars This Action*

Kaiser also contends that this litigation, commenced in March 2004, is precluded by the voters' adoption of Proposition 64 eight months later.

Proposition 64 amended certain provisions of the UCL and the false advertising law. The two amendments relevant to our analysis affect the right of private litigants to prosecute UCL actions. Before Proposition 64 was passed, an uninjured private party could bring a UCL action on behalf of the "general public," and could obtain remedies for the benefit of nonparties. (Bus. & Prof. Code, former §§ 17203 & 17204.) As amended by Proposition 64, the UCL now authorizes the filing of an injunctive or restitutionary relief action only by certain public prosecutors and by "any person who has suffered injury in fact and has lost money or property as a result of such unfair competition." (Bus. & Prof. Code, § 17204.) In addition, the UCL now authorizes a person to pursue a representative action only if he or she meets the class certification requirements of section 382 of the Code of Civil Procedure. (Bus. & Prof. Code, § 17203.)[6]

---

[6] Proposition 64 amended the UCL provision in section 17204 which pertains to private litigants to read: "Actions for any relief pursuant to this chapter shall be prosecuted exclusively . . . by any person who has suffered injury in fact and has lost money or property as a result of such unfair competition." Section 17203 was also amended, and now reads, in part: "Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure . . . ."

As noted in the introduction to this opinion, appellant claims to be a public interest organization, and in its FAC specifically asserted that it was suing on "behalf of the general public." Nowhere in the FAC did appellant allege that it was, or was authorized to represent, any Kaiser patient who had been—or even was likely to be—injured by Kaiser's policies with regard to the transmission of its medical information. Thus, it is indisputable that, if Proposition 64 applies to this case, appellant is not authorized to maintain this UCL action against Kaiser.

Appellant contends that (1) Proposition 64 does not apply because this case was filed before Proposition 64 was enacted; (2) if Proposition 64 does apply, we should remand the case to the trial court to allow appellant to move to substitute a plaintiff that can assert actual or likely injury; and (3) the issue here is standing to appeal, not standing to maintain the action in the first instance.

Appellant's first contention was rejected by our Supreme Court in a case that was decided after the appellate briefs were filed in the case. (See *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223 [46 Cal.Rptr.3d 57, 138 P.3d 207].) The court held that the UCL's amended standing provisions apply to cases that were pending when Proposition 64 took effect.

As noted above, appellant's alternative contention is that, if Proposition 64 does apply, this case should be remanded to the trial court so appellant can move to amend its complaint. The propriety of a motion under Code of Civil Procedure section 473 to substitute a new plaintiff in a case such as this is properly left to the trial court on remand. (*Haley v. Dow Lewis Motors, Inc.* (1999) 72 Cal.App.4th 497, 506–507 [85 Cal.Rptr.2d 352].) However, because of our affirmance of the judgment of dismissal on the basis ordered by the trial court, there will, of course, be no such remand.

Appellant's final point is that it has standing to appeal even if Proposition 64 applies. In *United Investors Life Ins. Co. v. Waddell & Reed, Inc.* (2005) 125 Cal.App.4th 1300, 1302–1305 [23 Cal.Rptr.3d 387] (*United Investors*), a defendant in a Business and Professions Code section 17200 action moved in the appellate court to dismiss the plaintiff's appeal on the basis of the passage of Proposition 64, arguing only that that plaintiff no longer had standing to pursue its appeal of the dismissal of its action below. (125 Cal.App.4th at p. 1302.) The appellate court disagreed, holding that the passage of Proposition 64 did not impact a party's standing to appeal, and thus denied the motion to dismiss the appeal. (125 Cal.App.4th at pp. 1304–1305.) In so holding, however, the court made quite clear that it did "not reach the merits of defendants' standing to sue argument as it relates to whether plaintiff may pursue its unfair competition claim in superior court." (*Id.* at p. 1304.)

Here, in contrast to *United Investors*, there is no motion to dismiss this appeal. Rather, Kaiser effectively urges that we can and should affirm the trial court's judgment on the alternative ground that appellant's FAC is barred by Proposition 64.[7] As noted above, we agree with that argument and so hold.

## IV. DISPOSITION

The judgment of dismissal is affirmed.

Lambden, J., and Richman, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 15, 2006, S146877. Werdegar, J., did not participate therein.

---

[7] In the course of concluding its argument regarding the retroactive effect of Proposition 64, Kaiser somewhat casually suggests that one way this court might effect a holding consistent with its argument would be by dismissing the appeal. But no formal motion to so do has been filed by Kaiser and, if it had, we would deny it on the basis set forth in the procedurally very different *United Investors* case.